MARION BROWN *v.* STATE.

(*Nashville.* December Term, 1928.)

Opinion filed July 19, 1929.

E. D. White, for plaintiff in error.

W. F. Barry, Jr., Assistant Attorney-General, for the State.

Mr. Justice Swiggart, delivered the opinion of the Court.

The conviction of the plaintiff in error, Marion Brown, is for voluntary manslaughter. He contends on appeal that the evidence preponderates in favor of his claim that he killed the deceased, Wilbur Hammock, in his own necessary and lawful self-defense.

■ Two other questions are made by the assignments of error. (a) The first, that the trial judge erred in excluding testimony of Hicks Bilbrey, cannot be considered because not made a ground of the motion for a new trial. (b) The other, that a new trial should have been granted for newly-discovered evidence, could not be sustained because the affidavit of plaintiff in error did not recite the exercise of diligence in his preparation for the trial, as required by *Ross, v. State,* 130 Tenn., 383.

■ Moreover, neither the testimony of Bilbrey nor the alleged newly-discovered evidence referred to the immediate facts of the homicide and neither was of sufficient importance to authorize a new trial.

Wilbur Hammock, a boy eighteen years of age, was shot by the plaintiff in error on the night of August 22, 1928, near the Guinea Heel Church, in Overton County.

On the night before, Jeff Hammock, Wilbur's brother, had a controversy at the church with a son of Newton

Smith. On the night of the homicide, Andrew Hammock, with his three boys, Jeff, Wilbur, and Burton, the last aged fourteen, went to the church. At some point in the churchyard Andrew Hammock took up the boys' difficulty with Newton Smith, using some rough talk and cursing which disturbed the meeting. Hammock first acceded to Brown's request, but renewed the loud talking and when Brown threatened to arrest him, he announced that he would not be arrested, and called his boys and left. There is evidence that he invited the whole crowd to come after him, calling them "damn cowards."

Brown then summoned Plemmons, Parrish, and Joe Hammock, a cousin of Andrew, to help him, and started after the Hammocks.

The party first overtook and arrested Wilbur Hammock, the deceased, alone. Plemmons searched him and informed Brown that he was unarmed. Brown then placed him in charge of Parrish. Wilbur made no effort to resist and was guilty of no threatening talk. A witness testified that he told Brown to "keep peace and don't hurt anybody."

There is evidence tending to show that Wilbur had in his possession at the church an "iron last." But there is no evidence that he had it for use as a weapon. He did not have it when he was searched before he was killed, nor afterward.

The clear preponderance is that Wilbur had taken no part in the disturbance of the meeting. Brown testified that he knew of no misconduct on the part of Wilbur and that he arrested Wilbur because he was "in the bunch" and he thought he ought to arrest them all. He had no warrant and the arrest was unlawful, since Wilbur had not committed an offense in Brown's presence.

Wilbur was shot by a bullet which struck him under his jaw and emerged at the top and rear of his head. The evidence of the State, supported by the testimony of Jeff Hammock, is that the man and boy were facing each other, "hunkered down," and that when Wilbur rose to a standing position Brown shot upward at him, without excuse or apparent cause; and that Brown subsequently engaged in a difficulty with Andrew and Jeff Hammock, who came up about the time Wilbur was shot.

The evidence of the plaintiff in error is that after Wilbur's arrest, he, Plemmons, and Joe Hammock, proceeded a short distance until they overtook Andrew, who stated that he would not submit to arrest. Three of them testified that Andrew took hold of Brown's collar and jerked him, whereupon Brown hit him over the head with a pistol and knocked him down. When Andrew arose Brown hit him a second time with the pistol. Parrish did not see Andrew jerk Brown, but testified that Brown struck with the pistol when Andrew said he could not be arrested.

When Andrew had been struck in the head a second time with the pistol, he and his son, Jeff, grappled with Brown and bore him to the ground. Brown testified that they were beating him and trying to get the pistol out of his hands. He did not say they were hurting him, nor how or where they were "beating him." He does not claim to have suffered any physical harm at their hands, or to have apprehended any serious bodily harm. At this time Wilbur approached, and Brown, wrenching his pistol free, fired the single shot which struck Wilbur. Brown testified: "I wrenched loose from both of them and shot Wilbur in the dark for I saw him coming on me. I don't know what it looked like he had in his hand. I

would not say for certain that he had anything. I know that he had his hand pulled clear from the bib of his overalls at the time I shot."

As shown above, Wilbur had been searched and found to be unarmed, and Brown knew the fact. It was a question for the jury and trial judge whether he believed that Wilbur had anything in his hand or that he was approaching to do him harm.

The two blows which Brown struck Andrew Hammock with the pistol were of sufficient force to crush his skull, from the effects of which his mind was impaired; and two weeks later he killed himself with a shotgun.

█ There was no emergency requiring the arrest of Andrew Hammock on the night of the homicide. The disturbance had ceased and he was on his way home. There was no likelihood of his flight, and a warrant could have been served upon him after his passions had cooled with little possibility of trouble. It was certainly unlawful for Brown to employ his pistol in making the arrest for a simple misdemeanor. This court has recently spoken on this subject in no uncertain terms. *Human* v. *Goodman*, 159 Tenn., 241, 17 S. W. (2d), —. The blows struck by Brown with the pistol were unjustifiable, and he thereby placed himself in the wrong. His own evidence justified an inference by the jury and trial judge that Andrew and Jeff Hammock were only trying to disarm him, and prevent his further assaults with the pistol. We are of that opinion, and think they were thoroughly justified in so doing, notwithstanding the previous misconduct of Andrew Hammock at the church.

On his own version of the homicide, we hold the plaintiff in error so far in the wrong, as the aggressor, that his shooting of Wilbur Hammock cannot be excused under the law of self-defense.

So long as peace officers continue to carry their concealed weapons to peaceful gatherings of citizens, and employ them in efforts to make arrests for misdemeanors, such tragedies as this will recur; a consideration which should outweigh any feeling of sympathy for the plaintiff in error on account of his age. The evidence as to his previous record is so mixed that we are unable to form a definite opinion as to his character or standing in the community. Certain it is that he lost his head in this affair, and his conviction of manslaughter is well supported by the evidence.

The judgment is affirmed.