STATE ex rel. HATTIE HARBIN, ADMINISTRA-
TRIX, v. ROBERT DUNN et al.

STATE ex rel. ARTHUR PARKER v. ROBERT DUNN
et al.*—282 S. W. (2d) 203.

Middle Section. November 13, 1943.

---

\* Reported on recomendation of Supreme Court, see Day v. Walton,
281 S. W. 2d 685.

J. B. Daniel and Paul Holbrook, both of Nashville, for plaintiff in error.

John W. Hilldrop and Collett Mayfield, both of Nashville, for defendant in error.

FELTS, J. These two cases, tried together, are actions against Robert Dunn, a constable, his official bondsmen, and Wilbur Collins for causing the death of Spencer Parker and personal injuries to Arthur Parker by firing a pistol into their automobile.

Relators charged that while acting by virtue of his office as constable, being driven in his automobile and aided and abetted by Wilbur Collins, and pursuing Arthur and Spencer Parker to arrest them for a misdemeanor he claimed they committed in his presence, the constable fired several shots at them in their automobile, shot down one of its rear tires, and caused it to overturn and kill Spencer Parker and seriously injure Arthur Parker.

The trial judge directed verdicts for defendants, and plaintiffs appealed in error and insist that the cases should have been submitted to the jury. The evidence disclosed these facts.

Arthur Parker was 28, married, and the father of two small children. For some ten years he had been employed at the DuPont Rayon Company at Old Hickory in Davidson County. His brother Spencer Parker was 21, unmarried, and lived on a farm in Davidson County with their mother, Hattie Harbin, who is now administratrix of Spencer Parker, deceased, and one of the relators or plaintiffs. On May 2, 1941, Arthur and Spencer Parker and their cousin Frank Parker, 18 years of age, went to Dickson in Arthur's automobile. On their way back home they stopped in White Bluff, Cheatham County, at Collins' place, Clearview Inn, a beer garden. Spencer had one bottle of beer and the other two had two bottles each. But none of them were drunk. At about 10 P. M. they left the beer garden and started home in the automobile, going toward Nashville on Highway No. 1 from White Bluff.

Spencer was driving the car. After going two or three miles they saw another automobile overtaking them, someone in it waving a flashlight. Thinking it might be "somebody trying to hold us up," Arthur told Spencer to outrun that car, and he speeded up to about 65 or 70 miles per hour. After running a mile or two and crossing the Cheatham County Line into Davidson County, they saw someone, later identified as Robert Dunn, the constable, lean out the pursuing car and begin firing a pistol at them. He fired four shots into their car, shot down its left rear tire, and caused it to overturn and injure all of them. They were taken to the Nashville General Hospital where their injuries were treated and where Spencer died of his injuries.

The constable charged Arthur and Frank Parker with public drunkenness in Cheatham County and in Davidson They were tried and acquitted in Davidson County; but when they went to answer the charge in Cheatham County they found that the justice of the peace before whom it was brought was not at his office or his home. When they went back again the justice proposed to dismiss the charge if they would pay the costs. They agreed to this on the advice of their attorney, Mr. Paul Holbrook, not because they were guilty but because it was cheaper than the expense and trouble of making further trips to defend against the charge. Robert Dunn, the constable, was present when the costs were paid, and he admitted that he had fired the shots into the automobile. Also, without their knowledge, Mr. Holbrook paid Mrs. Collins 50 cents, which she claimed they owed her for the beer.

The constable did not testify, and the only witness called by defendants was Clarence Greer, the justice and also one of the defendant sureties on the constable's bond; and he testified to nothing except the payment of the costs and the dismissal of the charge of public drunkenness.

The record does not show upon what ground the verdicts were directed. The ground here urged to support that action is that the young men were guilty of not paying for what they had bought at the beer garden, guilty of public drunkenness, and guilty of driving while drunk; that these were offenses for which the constable had a right to arrest the offenders; and that when he undertook to do this and they tried to flee in the automobile he had a right to shoot down its tires, as the only means of accomplishing the arrest.

We cannot follow this argument. It is true that Code Section 11536 authorizes an officer to arrest, without a warrant, a person for a public offense committed in his

presence; and that public drunkenness and driving while drunk are public offenses; but it is not true that an officer undertaking to arrest for such offenses, which are only misdemeanors, has a right to shoot the offender or endanger his life by shooting into his automobile to stop it and effect his arrest.

■■ As regards the means to which an officer may resort to make an arrest, the law sharply distinguishes between felonies and misdemeanors. While an officer may shoot or even kill a felon, if that is the only means of taking him or preventing his escape; yet in so doing the officer acts at his peril, for a jury may find that there was no reasonable necessity for the killing and that he is guilty of at least manslaughter. But an officer has no right to shoot at one guilty of only a misdemeanor to stop his flight or prevent his escape. The law considers that it is better to allow him to escape altogether than to take his life or to do him great bodily harm. Reneau v. State, 70 Tenn. 720, 31 Am. Rep. 626; Love v. Bass, 145 Tenn. 522, 238 S. W. 94; Human v. Goodman, 159 Tenn. 241, 18 S. W. (2d) 381; Brown v. State, 159 Tenn. 422, 19 S. W. (2d) 231; Scarbrough v. State, 168 Tenn. 106, 76 S. W. (2d) 106; Johnson v. State, 173 Tenn. 134, 114 S. W. (2d) 819; Jennings v. Riddle, 20 Tenn. App. 89, 95 S. W. (2d) 946; State to Use of Johnston v. Cunningham, 107 Miss. 140, 65 So. 115, 51 L. R. A., N. S., 1179.

In Reneau v. State an officer was held guilty of manslaughter for killing a misdemeanant to prevent his escape, and in Scarbrough v. State an officer was adjudged guilty of a like crime for killing a fleeing felon. In Love v. Bass, where a sheriff or his deputy killed a felon in flight, it was held a question for the jury whether there was any reasonable necessity for the killing and whether the sheriff and his bondsmen were liable in damages for

the death. Human v. Goodman affirmed a judgment for damages against an officer for shooting a misdemeanant running away, and so did Jennings v. Riddle. Likewise, in State, to Use of Johnston v. Cunningham, a sheriff and his bondsmen were held liable for damages for killing a fleeing misdemeanant.

Learned counsel argues that this case differs from those cases in that there the officer shot the person and here he shot the tire only to stop the car and arrest the occupants; and that this is ''the well-recognized method of stopping miscreants and law-breakers, all over the country, since the advent of the automobile.''

When applied to persons guilty only of a misdemeanor, however, a practice so unnecessary, so wanton, and so hazardous to human life by peace officers is not to be tolerated in a civilized state. Apart from the peril to innocent users of the highways, such a practice endangers the lives of petty offenders not only from mis-aimed gunfire but also from wrecking the automobile in consequence of shooting down its tires, as happened in this case.

The principle underlying the above decisions is that it is not only a civil wrong but also a crime for a peace officer to use firearms so as to imperil life or limb of a non-resisting, fleeing misdemeanant in an attempt to arrest him or prevent his escape. Johnson v. State, supra, held an officer guilty of a criminal assault for shooting at a misdemeanant fleeing from arrest; and in Brown v. State, supra, where an officer was convicted of manslaughter for killing a misdemeanant in an attempt to arrest him, the Court, through Mr. Justice Swiggart, said:

''* * * It was certainly unlawful for Brown to employ his pistol in making the arrest for a simple misdemeanor. This court has recently spoken on

this subject in no uncertain terms. Human v. Goodman, 159 Tenn. [241], 18 S. W. (2d) 381.'' 159 Tenn. 426, 19 S. W. (2d) 232.

Likewise, in State, to Use of Johnston v. Cunningham, supra, the Supreme Court of Mississippi expressed itself on the point as follows:

''There can be no question that a sheriff and the sureties on his official bond are liable in a civil action for damages arising from the intentional or negligent shooting of a misdemeanant who flees to avoid arrest. The officer owes to the fugitive the duty to exercise care and precaution not to injure him. He must not intentionally shoot a misdemeanant who is fugitive, nor must he discharge a firearm while in pursuit, in such a manner as to cause such fugitive injury.

\* \* \* \* \* \*

''The evidence discloses that there is a custom among officers to fire their pistols when pursuing fugitives, even where they are misdemeanants, as a ruse to prevent their further flight. We unqualifiedly condemn this practice of the reckless use of firearms. Officers should make all reasonable efforts to apprehend criminals; but this duty does not justify the use of firearms, except in the cases authorized by law. Officers, as well as other persons, should have a true appreciation of the value of a human life.'' 107 Miss. 149, 152, 65 So. 117, 51 L. R. A., N. S., 1182, 1183.

Under the foregoing cases, the duty to arrest for a misdemeanor affords no justification or excuse for shooting into an automobile to effect the arrest; and such an act is wanton or malicious because it is anti-social, ultra-hazardous, and criminal. We think such an act is not only an actionable civil wrong and a criminal

assault under those cases, but is also a felony under Code Section 10825, which is in these words:

"Any person who wantonly or maliciously either shoots, or throws any missile calculated to produce death or great bodily harm, at or into any dwelling or any other house which is being used or occupied, or any railroad car or locomotive, street car, aircraft, steamboat or any other watercraft, or vehicle of any kind, upon or in which any person may be at the time, shall be declared guilty of a felony, and, upon conviction, shall undergo confinement in the penitentiary for a period not less than one nor more than five years."

In this case the act of shooting at or into the automobile was calculated to produce death or great bodily harm to the occupants, and the jury could well have found that it did produce the injuries and death sued for. That the constable did not intend them and could not foresee that they would happen in the particular way they did, is no defense or excuse against civil liability for them. If the thing done produces immediate danger of injury, it is not necessary that the author of it should have in mind all the results which might happen from the danger, or that he could foresee the particular one which did happen. Nor does it matter that other forces combined with his act to produce that result. Memphis Consolidated Gas & Electric Co. v. Creighton, 6 Cir., 183 F. 552, 555-556; the "Squib Case," Scott v. Shepherd (1773), W. Bl. 892, 96 Eng. Reprint 525, 3 Wils. C. P. 403, 95 Eng. Reprint 1124; Jackson v. B. Lowenstein & Bros., Inc., 175 Tenn. 535, 136 S. W. (2d) 495. Compare: Keller v. State, 155 Tenn. 633, 299 S. W. 803, 59 A. L. R. 685; Reed v. State, 172 Tenn. 73, 110 S. W. (2d) 308.

But while the jury might reasonably have found that

the injuries and death sued for were the natural and probable consequences of the constable's wrongful act, could they have found that this act was a breach of his official bond and his sureties were liable for such consequences?

■ The evidence was that the act was done by him as constable in an attempt to arrest the occupants of the car for public drunkenness committed in his presence. There was, however, no evidence that he had a warrant. But the statute, Code, Sec. 11536, authorized him to arrest them without a warrant, if they were guilty of that offense in his presence. It is generally agreed that the sureties on the bond of a sheriff or a constable are liable for a wrongful act done by him in an attempt to serve a valid process or under a statute authorizing him to arrest without a warrant.

But, as the declarations implied and as the survivors testified and as we must assume to be true, the young men were not guilty of any offense and not doing anything to cause the belief that they were, and the statute gave the constable no authority to arrest them. Was his wrongful act done in an unauthorized attempt to arrest them a breach of his bond for which his sureties are liable?

■ This bond was conditioned, as required by Code Section 723, "for the faithful discharge of the duties of said office". This is substantially the same condition required in a sheriff's bond, Code, Sec. 690. Such a bond is an undertaking that the officer shall properly perform the duties of his office. His sureties are liable for any act of his in his character as an officer which is a breach of that duty; but of course they are not liable for any act of his in his character as an individual. While this is clear as a general principle, its application has occasioned much conflict of decision, not because of the difficulty of

discriminating official from non-official acts but because the question has often been made to depend upon the common-law distinction between acts done "by virtue of office" and acts done "under color of office."

This distinction was taken by courts in England under certain acts of Parliament which provided for notice, fixed the venue, and limited the time for bringing actions against an officer for an act done "by virtue of his office." To save such an action where possible against the bar of these statutes, the courts distinguished between acts done "by virtue of office" and acts done "under color of office," and held that these statutes applied to the former but not to the latter. The distinction was not a test of official liability; all it meant was that suits for acts "by virtue of office" could be maintained only in accordance with the statutes, while suits for acts "under color of office" could be maintained without regard to the statutes. Alcock v. Andrews (1788), 2 Esp. 544, 170 Eng. Reprint 449, note; Weller v. Toke (1808), 9 East. 364, 103 Eng. Reprint 611; Straight v. Gee (1818), 2 Stark. 448, 171 Eng. Reprint 700; Morgan v. Palmer (1824), 2 Barn. & Cres. 729, 107 Eng. Reprint 554; see also People v. Schuyler, 1850, 4 N. Y. 173, 181, 187, 193.

The distinction is well illustrated by Alcock v. Andrews, supra, which was an action against a constable for assault and false imprisonment. He objected that the action had not been commenced within six months, according to the limitation of 24 Geo. II, c. 48, s. 8. But Lord Kenyon overruled the objection upon this distinction (170 Eng. Reprint 449, note):

"That the defendant acted *colore officii,* and not *virtute officii;* and said, that it had often been held that a constable acting *colore officii* was not protected by the statute; where the act committed is of such a

nature that the office gives him no authority to do it, in the doing of that act he is not to be considered as an officer; but where a man doing an act within the limits of his official authority, exercises that authority improperly, or abuses the discretion placed in him, to such cases the statute extends—The distinction is between the extent and the abuse of the authority."

But the distinction has often been made a test of official responsibility in America. The statement of this view most frequently quoted is that of Pratt, J., in People v. Schuyler, 4 N. Y. 173, 187. In that case a majority of the Court held the sureties on the bond of a sheriff liable for his wrongful act in taking the goods of one man under a writ directing him to take those of another. Expressing the minority view, Justice Pratt said, 4 N. Y. 187:

"* * * The authorities recognize a principle or rule by which the acts of the sheriff, for which his sureties may be held liable, can be distinguished from those acts for which they will not be held liable. The former are termed acts done *virtute officii*, and the latter *colore officii*. The distinction is this: Acts done *virtute officii* are where they are within the authority of the officer, but in doing it he exercises that authority improperly, or abuses the confidence which the law reposes in him; whilst acts done *colore officii*, are where they are of such a nature, that his office gives him no authority to do them (Seel[e]y v. Birdsall, 15 John[s]. 267; Alcock v. Andrews, 2 Esp. 540, n.)."

This is the holding of one line of decisions, while the other holds that sureties of an officer's bond are liable for both classes of acts. 22 Am. Jur. p. 388; 43 Am. Jur. pp. 188-190; 47 Am. Jur. pp. 901-903, 908-911, 932-933; Me-

chem on Public Officers, Sec. 284, p. 179; 24 R. C. L. pp. 959-961, 965-967; and the numerous cases cited in Annotations, 1 A. L. R. 236, 247; 12 A. L. R. 981; 102 A. L. R. 182, 188; 116 A. L. R. 1070.

The former view has prevailed in the decisions in this state. McLendon v. State, 1893, 92 Tenn. 520, 22 S. W. 200, 21 L. R. A. 738; Ivy v. Osborne, 1925, 152 Tenn. 470, 279 S. W. 384; State ex rel. Key v. Cron, 1931, 12 Tenn. App. 615; State ex rel. v. National Surety Co. and Bragg, 1931, 162 Tenn. 547, 39 S. W. (2d) 581.

In McLendon v. State it was held that one who had been arrested and imprisoned by a deputy sheriff, under a void order of a criminal judge, could not recover because, the arrest and imprisonment being without authority, the sheriff and his sureties were not liable on his bond, and being sued officially, he could not be held individually.

In Ivy v. Osborne a deputy sheriff, without a warrant, arrested and imprisoned a woman who had committed no offense. It was held that, since the deputy's act was unauthorized, it was not an official act of the sheriff and there was no liability upon the sheriff's bond or the deputy's bond. The case, however, being on demurrer, was remanded on the question whether the sheriff was individually liable for having ratified the deputy's act, as the declaration charged.

State ex rel. Key v. Cron, supra, was an action against a constable and his bondsmen for wrongfully shooting and seriously wounding plaintiff, a fleeing misdemeanant, who some months before had escaped jail where he was serving a sentence for making whiskey. The Court held that because the constable had no warrant, was not ''in fresh pursuit,'' and no offense had been committed in his presence, he had no authority to arrest plaintiff; and that having acted without authority, he and his sureties

were not liable on his bond, and having been sued officially he could not be held individually.

In State ex rel. v. National Surety Co., and Bragg, supra, a widow sued the sheriff and the surety on his bond for a wrongful act of his deputy causing the death of her husband. He had just been badly hurt in an automobile accident, was lying at the scene, suffering great agony, and was about to be taken to a hospital by passers-by, when the deputy came up, stated the man was drunk, arrested him for public drunkenness, took him to jail, and kept him there from 1:30 a. m. till 11:30 a. m., without furnishing him any medical aid or notifying his family so they could do so. After being taken to a hospital he died at 5:30 p. m. the same day of gangrene resulting from his injuries and lack of timely medical care. Referring to the distinction on which liability depended, the Court said, 162 Tenn. 553, 39 S. W. (2d) 583:

"The course of judicial opinion in this state, as evidenced by the cases of Ivy v. Osborne and McLendon v. State, cited above, commits us to the principle that a sheriff and his official surety are liable for the consequences of a wrongful act of a deputy only when such act is done by virtue of the deputy's office, as distinguished from an act done under color of office merely. The distinction is stated in Mechem on Public Officers, § 284, quoting from People v. Schuyler, 4 N. Y. 187, thus: 'Acts done *virtute officii* are where they are within the authority of the officer, but in doing them he exercises that authority improperly, or abuses the confidence which the law reposes in him; whilst acts done *colore officii* are where they are of such a nature that his office gives him no authority to do them.' Observing this distinction, this court, in Ivy v. Osborne, supra, held that the

sheriff's liability for the wrongful acts of his deputy arises when such acts are 'done in an attempt to serve or execute a process, or under a statute giving him the right to arrest without a warrant.' "

Since the statute authorized the deputy to arrest the man for public drunkenness, and since the declaration (the case being on demurrer) alleged he was drunk, the Court held that the deputy had authority to make the arrest and that his mistreatment of the prisoner, lawfully in his custody, was an abuse of his authority, and a wrong by virtue, and not under color, of his office for which the sheriff and his surety were liable on his bond. In this connection the Court said, 162 Tenn. 557, 39 S. W. (2d) 584:

"The unlawful conduct with which the deputy is charged in these counts concerned and affected a prisoner who, it is expressly averred, had been lawfully arrested. As indicated hereinabove, we are of opinion that the fact that the arrest and custody were lawful in inception distinguishes the case before us from the cases of Ivy v. Osborne and McLendon v. State, supra; and we hold that unlawful treatment by a deputy sheriff of a prisoner whom he has lawfully arrested, whereby the prisoner is injured, is a wrong done by virtue of his office, for which the sheriff and his surety are liable. It is a failure to properly perform an official duty to the prisoner lawfully in his custody. We think the reasoning by which the conclusion of the court was reached in McLendon v. State demonstrates the correctness of the conclusion we reach here. With respect to an unlawful arrest, the court there said that, since the law forbade the arrest, the bond did not contemplate such an act and was not breached by it. Here the law

authorized the arrest, and it was the duty of the deputy to so employ his authority as not to unnecessarily and unlawfully injure his prisoner. A breach of this official duty is a breach of the bond, as charged in the declaration.''

Under this rule, if the occupants of the car had been guilty of public drunkenness, the constable would have had authority to arrest them, and his wrongful act in his attempt to arrest them would have been an act by virtue of his office for which he and his sureties would have been liable on his bond. But, as they were guilty of no offense, he had no authority to arrest them, and his wrongful act in his unauthorized attempt to arrest them was an act under color of his office for which he and his sureties are not liable on his bond.

There is, however, a statute in this state, Code Section 1833, which is in these words:

"1833 1092 (771). Obligation of bond.—Every official bond executed under this Code is obligatory on the principal and sureties thereon—

'' (1) For any breach of the condition during the time the officer continues in office or in the discharge of any of the duties of such office.

'' (2) For the faithful discharge of the duties which may be required of such officer by any law passed subsequently to the execution of the bond, although no such condition is expressed therein.

'' (3) For the use and benefit of every person who is injured, as well by any wrongful act committed under color of his office as by the failure to perform, or the improper or neglectful performance, of the duties imposed by law.''

 This applies to official bonds of all state and county officers, including constables and sheriffs, who are

required by the Code to give bond for faithful performance of the duties of the office; and it gives a right of action on the bond to every person who is injured as well by any wrongful act committed *under color of his office* as by failure to perform, or the improper or neglectful performance, of the duties imposed by law. Fort v. Dixie Oil Co., 170 Tenn. 464, 467, 95 S. W. (2d) 931, 932; Carr v. City of Knoxville, 144 Tenn. 483, 489, 234 S. W. 328, 330, 19 A. L. R. 69, 73. Applying this statute to the bond of a notary public, the Court, in State ex rel. First Trust & Savings Bank v. Easley, 176 Tenn. 185, 189, 140 S. W. (2d) 149, 151, through Mr. Chief Justice Green, said:

"This statutory provision does not require any interpretation. The statute means just what it says, as this court has recognized in Fort v. Dixie Oil Co., 170 Tenn. 464, 95 S. W. (2d) 931; Carr v. City of Knoxville, 144 Tenn. 483, 234 S. W. 328, 19 A. L. R. 69, and other cases."

The plain meaning of this statute is that an officer and his sureties are liable on his official bond to any person injured by any wrongful act done either *under color* or by virtue of his office.

Such is held to be the meaning of the Alabama statute, from which our statute was taken without change. Alabama Code of 1852, Sec. 130, now Sec. 50, tit. 41 of the Code of 1940. The courts of Alabama had held that the sureties on an officer's bond were liable for wrongful acts by virtue of his office, but not for acts under color of his office. The statute was passed to obviate that rule and to make the sureties liable for wrongful acts under color of office as well as by virtue of office. McElhaney v. Gilleland, 30 Ala. 183; Coleman v. Roberts, 113 Ala. 323, 21 So. 449, 36 L. R. A. 84, 59 Am. St. Rep. 111; Deason v. Gray, 189 Ala. 672, 66 So. 646; Pickett v. Richardson, 223 Ala. 683, 138 So. 274.

■ It is usually held that an act, to be under color of office, need not be under color of a writ, but it is sufficient if the officer professed to act by virtue of his office and induced others to believe he was so acting. Union Indemnity Co. v. Webster, 218 Ala. 468, 118 So. 794. In 22 Am. Jur. 389, it is said:

"It is agreed that where a public officer may make an arrest without warrant, he is, in so doing, performing a duty imposed by law within his official bond; and the more liberal cases, while holding that there is no liability upon the surety for acts done neither by virtue of nor under color of the office, declare that where an officer acts in excess of his authority in making an arrest without a warrant, it is done under color of his office and his sureties are liable therefor. Statutes which impose upon sureties liability for acts of an officer done under color of his office bind them for an illegal arrest without a warrant."

■ In the case before us the constable's wrongful act was an act under color of his office, and since our statute makes him and his sureties liable on his bond for such act, we must hold that the issue of their liability was a question for the jury, unless we are bound to follow the McLendon line of cases above referred to, which would compel a contrary result.

■ Of course a decision of our Supreme Court is an imperative precedent for us as an intermediate appellate court; but a decision is a precedent only for the point or points decided. In State ex rel. v. Nashville Baseball Club, 127 Tenn, 292, 307, 154 S. W. 1151, 1155, the Court, through Mr. Justice (now Chief Justice) Green, said:

"It is a familiar principle that *stare decisis* only applies with reference to decisions directly upon the · point in controversy. The point in controversy here

as to the proper passage of this bill by the Senate was not considered in Hayes v. State.

"Only the points in judgment arising in a particular case before the court are precedents for future decisions. Clark v. Lary, 3 Sneed, 77; Louisville, etc., R. Co. v. [Davidson] County Court, 1 Sneed, [637] 638, 62 Am. Dec. 424.

"The Supreme Court of the United States has said:

" 'Doubtless the doctrine of *stare decisis* is a salutary one and to be adhered to on all proper occasions; but it only arises in respect of decisions directly upon the points in issue.' Pollock v. Farmers' Loan & Trust Co., 157 U. S. 429, 574, 15 S. Ct. 673, 687, 39 L. Ed 759."

To the same effect, see: State v. Matthews, 143 Tenn. 463, 475, 226 S. W. 203, 207, 13 A. L. R. 314, 319; Winters v. American Trust Co., 158 Tenn. 479, 493, 14 S. W. (2d) 740, 743; State ex rel. Lea v. Brown, 166 Tenn. 669, 678, 64 S. W. (2d) 841, 843, 91 A. L. R. 1246.

A question which merely lurks in the record, neither brought to the attention of the Court nor ruled upon, is not to be considered as having been so decided as to constitute a precedent. KVOS, Inc., v. Associated Press, 299 U. S. 269, 279, 57 S. Ct. 197, 81 L. Ed. 183, 188. Where an applicable rule (statute or common law) is overlooked in the decision of a case, such decision is not authority for the proposition that the rule is not to be applied in like cases in the future. Katzenberger v. Weaver, 110 Tenn. 620, 635, 636, 75 S. W. 937, 941; Illinois Cent. R. Co. v. City of Memphis, 21 Tenn. App. 327, 336-346, 110 S. W. (2d) 352, 357-363; Burns v. Duncan, 23 Tenn. App. 374, 388, 133 S. W. (2d) 1000, 1008.

Upon these authorities, we think the McLendon case and like cases above referred to are not precedents for

our decision in the case before us. All of them applied the common-law rule that sureties on an officer's bond are liable for an act by virtue of office, but not for an act under color of office. In none of them was this statute, which declares such sureties liable for both classes of acts, considered or mentioned. The only point decided in any of those cases was the issue of common-law liability of the sureties; the point in controversy here as to their liability under this statute was not considered or referred to in any of the cases; and none of them is a precedent or authority for our decision of this question. This being so, it is our duty to follow the rule of the statute rather. than the rule of those cases.

 As a further ground to support the direction of the verdicts, it is suggested on the brief of counsel that Arthur and Spencer Parker, in trying to outrun the pursuing car, were guilty of contributory negligence. That, however, is not available as a defense to these actions. As stated above, the constable's wrongful act constituted a wanton assault. Contributory negligence is not a defense to a suit based on wanton negligence or for an assault. Lambrecht v. Schreyer, 129 Minn. 271, 152 N. W. 645, L. R. A. 1915 E, 812; Consolidated Coach Co., Inc., v. McCord, 171 Tenn. 253, 258, 102 S. W. (2d) 53, 55; 4 Am. Jur., Assault and Battery, Sec. 91, p. 176.

 For these reasons, we think the question of the liability of the constable and his sureties on his bond was a question for the jury and that the trial court erred in directing verdicts for them. There was, however, no evidence to support the charge that Wilbur Collins was driving the automobile for the constable or aiding and abetting him, there being no evidence as to who was doing the driving.

The judgment of the circuit court is affirmed as to Wil-

bur Collins and is reversed as to all the other defendants, and as to them the case is remanded to the circuit court for a new trial. The costs of the appeal in error are adjudged against the defendant constable and defendant sureties on his official bond. The costs which accrued below will abide the outcome.

Howell and Hickerson, JJ., concur.