ROSETTA GROSS, Plaintiff-Plaintiff-in-Error, v. B. K.
ABSTON, Defendant-Defendant-in-Error. —311 S. W.
(2d) 817.

Middle Section. November 1, 1957.

Certiorari denied by Supreme Court February 6, 1958.

Maclin P. Davis, Jr., William F. Howard, Nashville, for plaintiff in error.

A. B. Neil, Jr., Nashville, for defendant in error.

HICKERSON, J. Rosetta Gross, as widow of George Edward Gross, brought this suit against B. K. Abston to recover damages for the alleged wrongful death of her husband, George Edward Gross. Plaintiff alleged that B. K. Abston killed George Edward Gross "in a wilful, malicious, brutal, and unlawful manner and without any justification, cause or excuse therefor." The suit is being prosecuted for the use and benefit of the next of kin of George Edward Gross.

Defendant pleaded the general issue; and, also, filed the following plea:

"For further plea to the declaration the defendant B. K. Abston says that at the time and place the deceased, George E. Gross, lost his life the said George E. Gross was in the act of breaking or attempting to break into the house of his father by prying open the screen of his sister's bedroom window, or the defendant B. K. Abston had reason to believe the said George E. Gross was in the act of committing

or attempting to commit a felony and at this time the defendant B. K. Abston was in hot pursuit of the said George E. Gross by reason of an alarm that had been given in the neighborhood and that he, the defendant, was therefore justified in using such force as was necessary in preventing of such felony and apprehending the said George E. Gross."

The jury returned a verdict for defendant, and judgment was entered thereon. Plaintiff appealed in error to this Court. There is one determinative issue before this Court: Are the verdict and judgment based thereon supported by material evidence?

The following facts are established by the uncontradicted testimony of defendant: Defendant and his mother live on the same side of the street. There is only one home between her home and his home. The facts and circumstances about which defendant testified occurred at 8:30 o'clock on the evening of June 8, 1955. Defendant testified:

"I am a white man, 25 years old and live at 812 19th Avenue South. I am a plumber. I have never been arrested or convicted of anything. On the night of June 8, 1955, I was at home taking a bath. My wife had gone to my mother's house at 815 19th Avenue South, to borrow some buttons. My wife came back about five minutes later. My house is on the same side of the street as my mother's house and there is one house between them. My father was away from home at choir practice and my mother and nine year old sister were at home alone.

"When asked what his wife told him, the plaintiff objected. The Court overruled the motion and the plaintiff excepted.

"She said that she had seen a colored man at my mother's house down the street and that he walked into the yard and asked her what address it was. I got my flashlight and pistol and went into the yard of my mother's house. I saw the light on in my sister's room and saw her reflection. I saw no one in the front yard and then went to the side yard adjacent to a vacant lot and looked for a minute without a flashlight and saw nothing. Then I turned the light on and saw a colored man standing by the window at the side of the house looking in. He had his hand on the screen and I watched him for about a minute and he did not move during this time. I turned my flashlight on and he began to run. I told him to stop three times while he was running; he did not stop so I shot him with my pistol and he fell. I did not go over to see him, but I called the police and they came out in a few minutes. I did not go up to the man to see whether he was dead or alive. An ambulance came a little later after the police did and took the colored man away. I do not know who the colored man was and I do not know George Gross.

"When asked if he was arrested at any time for shooting and killing George Edward Gross, the plaintiff objected to the answering of this question on the ground that it was immaterial. The Court overruled his objection and the plaintiff excepted.

"I was not arrested for shooting George Gross. I do not have a Deputy Sheriff's commission and am

not a policeman of any kind and do not have a permit for my gun, which is a target pistol. I bought the pistol in Tennessee. At the time I shot the colored man he was running full speed away from me and he fell about 100 feet from my mother's house. He never advanced toward me and I did not see that he had a weapon of any kind.''

■ Under these uncontradicted facts, a man named George Edward Gross was guilty of violating the ''Peeping Tom Act'' of Tennessee, which was a misdemeanor. T. C. A. sec. 39-1212; Goodrich v. Morgan, 40 Tenn. App. 342, 291 S. W. (2d) 610.

For emphasis, we repeat a portion of the testimony of defendant, as follows:

''At the time I shot the colored man he was running full speed away from me and he fell about 100 feet from my mother's house. He never advanced toward me and I did not see that he had a weapon of any kind.''

■ The determinative question then is this: Must the minds of all reasonable men reach the conclusion that defendant shot the deceased as a necessary measure to prevent the deceased from injuring the person or property of defendant or his mother?

Generally stated: Is a private person authorized under the law of this state to shoot a citizen who has committed a misdemeanor in the presence of the private person who is seeking to apprehend the misdemeanant when the misdemeanant was ''running full speed away'' from the private person who is attempting to arrest him?

The law which controls this question is clear and unmistakable in this jurisdiction. We shall quote the applicable code sections.

T. C. A. sec. 38-101. "Lawful resistance — By whom made.—Lawful resistance to the commission of a public offense may be made by the party about to be injured, or by others."

T. C. A. sec. 38-102. "When resistance may be made by party about to be injured.—Resistance sufficient to prevent the offense may be made by the party about to be injured:

"(1) To prevent an offense against his person.

"(2) To prevent an illegal attempt by force to take or injure property in his lawful possession."

T. C. A. sec. 38-103. "When resistance may be made by others.—Any other person, in aid or defense of the person about to be injured, may make resistance sufficient to prevent the offense."

Our Supreme Court, speaking through Mr. Justice Cook, has stated the correct rule with the characteristic simplicity and clarity for which that distinguished jurist was noted, as follows: Human v. Goodman, 159 Tenn. 241, 243-244, 18 S. W. (2d) 381.

"An officer has no absolute right to kill, either to take a prisoner, or prevent his escape, even in felonies, unless reasonably necessary to prevent escape; and whether or not there is a reasonable necessity for an officer to shoot a felon in flight and the reasonableness of the grounds on which the officer acted are

questions for the jury. Love v. Bass, 145 Tenn. [522], 529, 530, 238 S. W. 94.

"There is a marked distinction between the right of an officer to use force as related to felonies and misdemeanors. The circumstances under which they may use force or shoot to arrest the flight of a felon are indicated in our case of Reneau v. State [70 Tenn. 720], 2 Lea 720, and Love v. Bass, supra.

"Except in self-defense, an officer cannot resort to the extremity of killing, or shedding blood, in arresting or in preventing the escape of one charged with an offense less than felony, even though the offender cannot be taken otherwise. 5 C. J., 426.

"The lawmaking power has not imposed the death penalty for contravention or misdemeanor and it cannot be assumed by arresting officers that the power of life or death over persons accused or suspected of misdemeanor has been extended to them; and they have no right to sacrifice human life or to shed blood to prevent the escape of petty offenders. State v. McClure, 166 N. C. 321, 81 S. E. 458; State v. Cunningham, 107 Misc. 140, 65 So. 115, 51 L. R. A., N. S., 1179.

'The distinction between right of officers to use force in arresting for felony and misdemeanor here emphasized was not clearly drawn in the opinion of the Court of Appeals."

See also State ex rel. Morris v. National Surety Company, 162 Tenn. 547, 39 S. W. (2d) 581; Love v. Bass, 145 Tenn. 522, 238 S. W. 94; Jennings v. Riddle, 20 Tenn. App. 89, 95 S. W. (2d) 946; State ex rel. Harbin v. Dunn,

39 Tenn. App. 190, 282 S. W. (2d) 203; Day v. Walton, 199 Tenn. 10, 281 S. W. (2d) 685.

In State ex rel. Harbin v. Dunn, supra [39 Tenn. App. 190, 282 S. W. 206], this Court said:

"As regards the means to which an officer may resort to make an arrest, the law sharply distinguishes between felonies and misdemeanors. While an officer may shoot or even kill a felon, if that is the only means of taking him or preventing his escape; yet in so doing the officer acts at his peril, for a jury may find that there was no reasonable necessity for the killing and that he is guilty of at least manslaughter. But an officer has no right to shoot at one guilty of only a misdemeanor to stop his flight or prevent his escape. The law considers that it is better to allow him to escape altogther than to take his life or to do him great bodily harm. Reneau v. State, 70 Tenn. 720, 31 Am. Rep. 626; Love v. Bass, 145 Tenn. 522, 238 S. W. 94; Human v. Goodman, 159 Tenn. 241, 18 S. W. (2d) 381; Brown v. State, 159 Tenn. 422, 19 S. W. (2d) 231; Scarbrough v. State, 168 Tenn. 106, 76 S. W. (2d) 106; Johnson v. State, 173 Tenn. 134, 114 S. W. (2d) 819; Jennings v. Riddle, 20 Tenn. App. 89, 95 S. W. (2d) 946; State, to Use of Johnston v. Cunningham, 107 Miss. 140, 65 So. 115, 51 L. R. A., N. S., 1179."

The right of a private person to make an arrest is more restricted than the right of an officer to make an arrest. Martin v. Castner-Knott Dry Goods Company, 27 Tenn. App. 421, 181 S. W. (2d) 638.

There is no evidence in this record to support the verdict of the jury in favor of defendant. A verdict should have been directed for plaintiff upon the testimony of defendant. Since the trial judge refused to direct a verdict for plaintiff, this Court must sustain the assignment that there was no evidence to support the judgment of the trial court based upon a jury verdict; reverse the judgment of the trial court; and remand the cause for new trial. Let the judgment so provide in this Court with all costs adjudged against B. K. Abston, the defendant in the trial court.

Felts, J., concurs.

Shriver, J., dissenting.

SHRIVER, J. (dissenting). I respectfully disagree with my colleagues in this case because I feel that the trial judge correctly concluded that the facts and circumstances shown by the record make questions for the jury, (1) as to whether or not the deceased was in the act of commiting a felony when defendant discovered him at the window of defendant's nine year old sister and tried to apprehend him, and (2) as to whether defendant used improper means in his attempt to arrest deceased.

Where the deceased, a young Negro man, was at the window of this young girl's bedroom at 8:30 o'clock P.M. while she was inside the room and where he was hidden in the dark between two houses, with his hand on the window, it cannot be successfully argued that he was there for any legitimate or lawful purpose, and I cannot agree with the conclusion expressed in the majority opinion that, as a matter of law, he was guilty of violating *only*

the "Peeping Tom Act"—T. C. A. sec. 39-1212, which is a misdemeanor.

Under our statutes T. C. A. sec. 39-603 and decisions, the attempt to commit a felony is punishable as a felony. See De Lacy v. State, 67 Tenn. 401; Rafferty v. State, 91 Tenn. 655, 16 S. W. 728.

The majority opinion herein states:

"The determinative question then is this: Must the minds of all reasonable men reach the conclusion that defendant shot the deceased as a necessary measure to prevent the deceased from injuring the person or property of defendant or his mother?"

This question seems to presuppose a situation where there was a directed verdict for defendant. In such case we would properly inquire as to whether or not the minds of all reasonable men must agree with the conclusion reached by the judge who directed the verdict. But there was no directed verdict in the case at bar. The jury found for defendant.

It seems to me that a more correct statement of the determinative questions before us, is:

(1) Is there room for difference of opinion among reasonable men as to whether or not deceased was engaged in the commission of a felony, or an attempt to commit a felony?

(2) Must the minds of all reasonable men reach the conclusion that defendant did *not* shoot the deceased as a necessary or permissible measure to prevent his escape?

Of course these are jury questions if reasonable men may differ as to the conclusions to be drawn from all the facts and circumstances shown by the record.

Sec. 40-808, T. C. A., provides that, if, after notice of the intention to arrest, the defendant either flees or forcibly resists, an officer may use all necessary means to effect the arrest. In Love v. Bass, 145 Tenn. 522, 238 S. W. 94, it was said that the killing of a felon is not justified in capturing him or preventing his escape, if, with diligence and caution, he might otherwise be taken and held, and, as to what constitutes due diligence and caution under given circumstances, is a jury question.

Sec. 40-811 defines fresh pursuit as that known to the common law, and also the pursuit of a person who has committed a felony, or who is reasonably suspected of having committed a felony.

Sec. 40-816, T. C. A., provides;

"A private person may arrest another: (1) For a public offense committed in his presence; (2) when the person arrested has committed a felony, although not in his presence; (3) when a felony has been committed, and he has reasonable cause to believe that the person arrested committed it."

And Sec. 40-817 provides;

"Arrests by private persons for felony may be made on any day and at any time."

Sec. 40-819 gives a private person, after notice of his intention to arrest a felon and refusal of admittance, the right to break open an outer door or window of a dwelling house to make the arrest.

We have found no statute and no decision by our Supreme Court to the effect that a private citizen may not use the same force as an officer to arrest and prevent the escape of one who has committed a public offense in his presence. The tenor of the statutes and decisions is that he may use such force.

While the shooting of a fleeing offender is not to be lightly condoned, nevertheless, in view of the inordinate number of reported cases of assault of females of all ages in their homes at night in this community, preceding the time defendant shot deceased outside the home of his mother and young sister who were there alone; and in view of the great amount of publicity given these crimes and attempted crimes, all of which is common knowledge here, defendant could hardly have been expected to look on the situation that he faced on the occasion in question, with calmness and equanimity.

As to whether, under the circumstances, he used improper and unjustifiable force in trying to restrain the deceased was for the jury to decide upon proper instructions from the Court, hence, I think the verdict and judgment of the trial Court should be affirmed.