810 F.2d 203
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Edward A. SLAVIN, Jr., Plaintiff-Appellant,
v.
CITY OF OAK RIDGE, TENNESSEE; Howard F. Lee; Alan R.
Massengill; Scott E. Ball; and J.W. Dunn,
Defendants-Appellees.
 No. 84-5759.
 United States Court of Appeals, Sixth Circuit.
 Nov. 4, 1986.
 
 Before KRUPANSKY and GUY, Circuit Judges, and HOLSCHUH, District Judge.*
 GUY, Circuit Judge.
 
 
 1
 Plaintiff Slavin appeals from a judgment entered in favor of defendants after a jury trial involving Slavin's 42 U.S.C. § 1983 claims. Slavin had been arrested on the night of May 14, 1983, and charged with public drunkenness. Slavin had been a passenger in an automobile driven by Philip Harber which was stopped by defendant police officers Ball and Massengill for speeding 68 miles per hour in a 45 mile per hour zone. Harber was arrested and charged with driving while intoxicated. In the course of the stop and subsequent arrest of Harber, the officers questioned Slavin and asked him to step out of the car. Since the officers observed what they concluded to be sufficient signs of intoxication exhibited by Slavin, he too was arrested.
 
 
 2
 Upon being transported to the station house where he arrived at approximately 11:15 p.m., Slavin was allowed to telephone attorney David Stuart. Both Harber and Slavin talked to Stuart, and Harber asked him to come down and get them out of jail. Stuart arrived at the jail approximately 15 minutes after being called and was allowed to talk to Harber, which he did for almost one-half hour. Stuart's requests to also talk to Slavin were either ignored or denied. Slavin was ultimately released at 2:45 a.m., after a cash bond was posted. Slavin was never taken before a judicial officer prior to his release from custody. It is not disputed that there is and has been for some time a "guideline" followed by the Oak Ridge Police Department to the effect that persons arrested on charges involving intoxication are routinely detained four hours and then released if it appears they are not a threat to themselves or others. Supervisory personnel have the authority to vary the guidelines up or down as conditions warrant.
 
 
 3
 On June 23, 1982, the criminal trial was scheduled involving the charge of public drunkenness against Slavin. The charge was dismissed on motion that date. On May 12, 1983, Slavin instituted this civil rights action claiming he had been deprived of liberty without due process of law, that he had been denied his right to be free from unlawful arrest and unreasonable searches and seizures, that he had been denied his right to counsel and that he had been subjected to cruel and unusual punishment and incarceration without bond. Slavin's sixth amendment right to counsel claims and his eighth amendment cruel and unusual punishment claims were directed out by the trial judge during the trial, as was his claim for punitive damages. The case was submitted to the jury on the issues of arrest and detention without probable cause in violation of the "Fourteenth Amendment protection against unreasonable searches and seizures" and on the issue of his being held for four hours without being taken before a judicial officer in "violation of the Fourteenth Amendment protection against deprivation of liberty without due process." (Jury Instructions, App. 261-262.) The three individual police officer defendants primarily defended on the basis of good faith immunity since there was little dispute as to what occurred. The City of Oak Ridge essentially admitted that a four-hour detention for drunkenness offenses was a policy, but that it was a reasonable one and one that did not invade any constitutionally protected interest of the plaintiff. The jury was given only a general verdict form and found for defendants.[1]
 
 On appeal, Slavin raises five issues:
 
 4
 I. Whether Plaintiff was arrested for the offense of public drunkenness without probable cause to believe that he was guilty of any criminal offense in violation of his rights as guaranteed by the fourth amendment to the United States Constitution.
 
 
 5
 II. Whether Plaintiff was unlawfully and arbitrarily detained for nearly four hours following arrest without being taken before a magistrate or other judicial officer and was arbitrarily denied the right to make bail in violation of his fourth, fifth, eighth, and fourteenth amendment rights.
 
 
 6
 III. Whether the denial of Plaintiff's requests to confer with his attorney who was present at the police station and who asked repeatedly to see Plaintiff violated his sixth amendment rights.
 
 
 7
 IV. Whether the Trial Court improperly admitted over Plaintiff's objection evidence that a pipe with marijuana residue was confiscated from Plaintiff following his arrest.
 
 
 8
 V. Whether the Trial Court erred in granting a directed verdict for Defendants on the issue of punitive damages.
 
 
 9
 (Appellant's Brief at vi.) These issues will be considered seriatim.
 
 
 10
 WAS PLAINTIFF'S ARREST FOR PUBLIC DRUNKENNESS WITHOUT PROBABLE CAUSE?
 
 
 11
 Slavin makes two arguments in support of his contentions here. First, there was insufficient indicia of his intoxication to be charged with drunkenness and, second, he was not in a "public" place.
 
 
 12
 Much of plaintiff's argument on the issue of his intoxication results from two post arrest occurrences. After release from custody, his attorney took him to the hospital where a blood/alcohol test was performed at approximately 3:45 a.m. This test was negative for alcohol. Second, the charges against him were ultimately dismissed. The jury was aware of these facts. In fact, Slavin called an expert witness who testified as to the significance of the results of the alcohol test as it related to plaintiff's probable condition at the time of arrest. In opposition to this testimony, however, the jury also had plaintiff's admission of having two drinks prior to the police stop and the testimony of the arresting officer as to plaintiff's condition (rigid posture; swaying; blood-shot eyes; slow, low speech; differing stories as to alcohol consumption; and inability to recite perfectly the alphabet). There was also testimony (denied by plaintiff) that there were beer cans in the car. The defense also brought out at trial that Slavin's post-arrest recollection of his cell and conditions of confinement were also inaccurate in several particulars, creating an inference that his condition while in custody was impaired.
 
 
 13
 In reviewing civil jury verdicts, this circuit follows the general and traditional view that the evidence must be viewed in the light most favorable to the prevailing party. Calhoun v. Baylor, 646 F.2d 1158 (6th Cir.1981). There is little doubt here that there was substantial evidence from which the jury could have concluded that the officers in good faith believed the plaintiff was intoxicated.[2]
 
 
 14
 As to whether a car on a highway is a "public place" within the purview of the offense of public drunkenness, the answer is less clear. There is no Tennessee case on point,[3] and the cases from other jurisdictions are not all in accord. See Annot., 8 A.L.R.3d 930 (1966), "LOCATION OF OFFENSE AS 'PUBLIC' WITHIN REQUIREMENT OF ENACTMENTS AGAINST DRUNKENNESS." What is clear, however, is that the law is sufficiently unresolved so that the officers' claim of good faith immunity was appropriate. Since the Supreme Court decision in Pierson v. Ray, 386 U.S. 547, 557 (1967), there is no doubt that the defense of good faith immunity is available to police officers in a § 1983 action. There is also no doubt that where the law is unsettled police officers will be "shielded from liability for civil damages insofar as their conduct does not violate established constitutional or statutory rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).[4]
 
 
 15
 We thus conclude there was no error in the jury verdict as it relates to plaintiff's claims with regard to the probable cause issue in connection with his arrest.[5]
 
 
 16
 WAS THE FOUR-HOUR DETAINMENT OF PLAINTIFF WITHOUT BEING TAKEN BEFORE A JUDICIAL OFFICER A VIOLATION OF HIS CONSTITUTIONAL RIGHTS?
 
 
 17
 It was generally conceded at trial that it was an unwritten "guideline" of the Oak Ridge Police Department that persons arrested for intoxication offenses were held for a period of four hours. Thus, plaintiff appropriately sought redress against the City of Oak Ridge for allegedly maintaining a policy which infringed upon plaintiff's constitutional rights. Monell v. New York City Dept. of Social Services, 436 U.S. 658 (1978).
 
 
 18
 It was also conceded at trial that during the period from approximately 11:15 p.m. to 2:45 a.m., plaintiff was held in custody, he was not taken before a judicial officer, nor admitted to bail until his release.[6]
 
 
 19
 In analyzing this issue, our starting point is that we have already concluded that the jury's determination that the arresting officers had reason to believe plaintiff was intoxicated was appropriate and supported by the record. This fact is significant because it limits the issue before us. We need not pass judgment on Oak Ridge's "four-hour" policy in general, but need only answer the question as to the appropriateness of the jury's determination that the four-hour detention of this plaintiff, whom the police reasonably believed to be intoxicated, did not result in a constitutional violation.
 
 
 20
 The fourth amendment requires that there be probable cause for an arrest. To implement this protection, it is required that probable cause be decided by a neutral and detached judicial officer whenever possible. Johnson v. United States, 333 U.S. 10 (1948). Although under the fourth amendment police officers may arrest without a prior judicial determination of probable cause, "the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." Gerstein v. Pugh, 420 U.S. 103 (1975) (emphasis added).[7]
 
 
 21
 There are a plethora of cases dealing with the question of just how extended the period of time may be between arrest and appearance before a judicial officer. No purpose would be served by an extensive review of these cases, however, since the delay with which we are dealing here is relatively short, and delays of four hours or less under circumstances such as are presented here (intoxication and middle of the night arrest) have quite universally passed constitutional muster. Typical of such holdings is Patzig v. O'Neil, 577 F.2d 841 (3rd Cir.1978): "An arrest for drunken driving at 4:30 a.m. on a Saturday, followed by confinement for five hours pending arraignment before a magistrate does not, without more, constitute a deprivation of due process rights." Id. at 846.
 
 
 22
 Under the facts presented here, we agree with the jury and the holding of Patzig that no constitutional deprivation occurred as a result of this four-hour detainment.
 
 
 23
 WAS THERE A SIXTH AMENDMENT VIOLATION OF PLAINTIFF'S RIGHT TO COUNSEL?
 
 
 24
 Plaintiff Slavin and Philip Harber were arrested together and taken to jail together. At the jail, they were immediately allowed to make a joint phone call to attorney Stuart who came down to the police station shortly thereafter. Stuart was allowed to talk to Harber almost immediately and did so for a period of almost thirty minutes. The police officer defendants claim they did not then arrange for a conference between Stuart and Slavin because they were busy with other matters and they did not have time to supervise an attorney-prisoner conference. Defendants also indicate that Stuart was issuing orders and throwing his weight around, and it appears he did not ingratiate himself with the officer in charge. Slavin was ultimately released when Stuart posted his bail.
 
 
 25
 Little time need be spent on this issue in light of the very recent United States Supreme Court decision in Moran v. Burbine, 106 S.Ct. 1135 (1986). In Moran, the Supreme Court reiterated against a factual backdrop far more egregious than that alleged here, that the right to counsel attaches only after adversary judicial proceedings have been initiated against an accused. In Moran, the Court stated:
 
 
 26
 [W]e find respondent's understanding of the Sixth Amendment both practically and theoretically unsound. As a practical matter, it makes little sense to say that the Sixth Amendment right to counsel attaches at different times depending on the fortuity of whether the suspect or his family happens to have retained counsel prior to interrogation. More importantly, the suggestion that the existence of an attorney-client relationship itself triggers the protections of the Sixth Amendment misconceives the underlying purposes of the right to counsel. The Sixth Amendment's intended function is not to wrap a protective cloak around the attorney-client relationship for its own sake any more than it is to protect a suspect from the consequences of his own candor. Its purpose, rather, is to assure that in any "criminal prosecutio[n]," U.S. Const., Amdt. 6, the accused shall not be left to his own devices in facing the " 'prosecutorial forces of organized society.' " Maine v. Moulton, --- U.S. at ----, 106 S.Ct. at 484 (quoting Kirby v. Illinois, 406 U.S. at 689, 92 S.Ct. at 1882). By its very terms, it becomes applicable only when the government's role shifts from investigation to accusation. For it is only then that the assistance of one versed in the "intricacies ... of law," ibid., is needed to assure that the prosecution's case encounters "the crucible of meaningful adversarial testing." United States v. Cronic, 466 U.S. 648, 656 ... (1984).
 
 
 27
 As Gouveia made clear, until such time as the " 'government has committed itself to prosecute, and ... the adverse positions of government and defendant have solidified' " the Sixth Amendment right to counsel does not attach. United States v. Gouveia [467 U.S. 180], at 189 [ (1984) ] ... (quoting Kirby v. Illinois, 406 U.S. at 689)....
 
 
 28
 106 S.Ct. at 1146, 1147. Slavin's sixth amendment claims are without merit.[8]
 
 
 29
 DID THE TRIAL COURT COMMIT REVERSIBLE ERROR BY ADMITTING INTO EVIDENCE TESTIMONY RELATING TO A PIPE CONTAINING MARIJUANA RESIDUE FOUND ON PLAINTIFF'S PERSON AT THE TIME OF HIS ARREST?
 
 
 30
 When Slavin was searched incident to his arrest a pipe was found in his pocket which ultimately was determined to contain marijuana residue.[9] Prior to trial plaintiff moved in limine to keep out any reference to the pipe as "irrelevant and immaterial." (App. 33) This motion was denied. In denying the motion, the trial judge stated:
 
 
 31
 Well, that may be so and assuming it does, though, you still got a man who they thought was under the influence and then they start finding on his person an apparatus of something that you use to get you under the influence of something; which, in the state of mind, is very important, what they felt at that time.
 
 
 32
 For that reason I think it's got to come in.
 
 
 33
 (App. 39-40).
 
 
 34
 In reviewing a trial court decision on whether evidence is relevant or not, the standard of review is abuse of discretion and a reviewing court will not disturb that decision on appeal absent a showing of a clear abuse of discretion. Texas Eastern Transmission Corp. v. Marine Office-Appelton and Cox Corp., 579 F.2d 561 (8th Cir.1978). Furthermore, "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of this party is affected...." Fed.R.Evid. 103(a).
 
 
 35
 The prosecution urged admission of the evidence on the basis that it "goes to the status of the condition of these gentlemen's minds when they were out there on the scene." (App. 36.) The trial judge obviously concluded that their state of mind was relevant. There are several problems with this conclusion. First, there is no claim that plaintiff's arrest was for other than alcohol intoxication. The pipe was not even found until plaintiff was searched incident to arrest, and the arrest had nothing to do with marijuana.
 
 
 36
 Second, the finding of the pipe does not in any way allow a conclusion that its contents were recently smoked by plaintiff and contributed to his condition. Indeed, it took lab analysis to even confirm that the pipe contained marijuana residue.
 
 
 37
 Third, assuming that the evidence was offered on the issue of the police officers' qualified immunity, their state of mind is no longer relevant under the test enunciated in Harlow v. Fitzgerald, 457 U.S. 800 (1981). Qualified immunity is now determined on the basis of the "objective reasonableness" of the officers' conduct. Id. at 818. See also Malley v. Briggs, 106 S.Ct. 1092 (1986).
 
 
 38
 Upon analysis, we conclude that the evidence as to the pipe was not relevant and should have been excluded. We also conclude, however, that the error was harmless.[10] At trial little emphasis was placed on finding the pipe. No attempt was made to paint the plaintiff (defendant in the criminal trial) as a bad person. Furthermore, the jury was made fully aware that plaintiff was a responsible person of good character, and the defendants made no effort to refute this. Errors in admitting evidence are harmless if they do not affect substantial rights of the parties, and the burden is on the party asserting error to demonstrate that substantial rights were affected. Perry v. State Farm Fire and Casualty Co., 734 F.2d 1441 (11th Cir.1984), cert. denied, 105 S.Ct. 784 (1985).
 
 
 39
 The entire case here turned on the issues of the propriety of plaintiff's arrest for public drunkenness and his subsequent four-hour detention. We see no way that a jury would have been led to a conclusion one way or the other on these issues because of the brief reference to the pipe. We thus conclude that reversal is not merited as a result of this evidentiary error.
 
 
 40
 DID THE TRIAL COURT CORRECTLY GRANT A DIRECTED VERDICT AFTER THE CLOSE OF PROOFS ON THE ISSUE OF PUNITIVE DAMAGES?
 
 
 41
 "We hold that a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983).
 
 
 42
 The parties are in agreement that Smith v. Wade articulates the standard for the award of punitive damages in a § 1983 case. Applying that standard to the record made here, it is clear that the defendants' conduct fell far short of the evil, reckless, or callous actions which would support a claim for punitive damages. We thus find that the trial judge was correct when he granted the motion for directed verdict on this issue.
 
 
 43
 The matter is actually moot at this juncture, however, since we have agreed that the jury's failure to find in favor of plaintiff is not subject to reversal, and, since the jury saw fit to award no compensatory damages, it is axiomatic that no punitive damages could be awarded.
 
 
 44
 Finding no error on any of the points raised by plaintiff, we AFFIRM the judgment entered pursuant to the jury verdict.
 
 
 
 *
 Honorable John D. Holschuh, United States District Court, Southern District of Ohio, sitting by designation
 
 
 [1]
 The verdict form read, "We, the jury, unanimously find as follows: The plaintiff, Edward A. Slavin, Jr., is not entitled to recover from one or more of the defendants." (App. 283)
 
 
 [2]
 Plaintiff's attempt to draw a distinction between "intoxicated" and "drunk" is unpersuasive. The court gave an instruction which followed precisely the plaintiff's contention as to the degree of impairment necessary to be "drunk." (App. 271-72)
 
 
 [3]
 See, however, State v. Dunn, 282 S.W.2d 203 (Tenn.App.1943)
 
 
 [4]
 Pursuant to Harlow, the question of the objective reasonableness of an officer's conduct will normally be a question for the court. However, where there are different versions of what occurred, factual questions requiring jury determination may be present
 
 
 [5]
 "[T]he question of proable cause in a § 1983 damage suit is one for the jury." Patzig v. O'Neil, 577 F.2d 841 (3rd Cir.1978)
 
 
 [6]
 Plaintiff does not contend that a judicial officer was available during this period of time
 
 
 [7]
 Plaintiff's reliance on Gerstein, however, is misplaced since Gerstein is factually inapposite. Gerstein dealt with a Florida procedure which foreclosed a right to a preliminary hearing if a person was arrested on a prosecutor's information
 
 
 [8]
 Plaintiff's sixth amendment claims were never submitted to the jury as they were directed out by the trial judge at the conclusion of the proofs. The trial judge correctly granted a directed verdict
 
 
 [9]
 Since we have already determined that the jury correctly determined that the arrest of plaintiff was on probable cause, we need not consider here plaintiff's arguments as they relate to the fruits of searches following an illegal arrest
 
 
 [10]
 Chapman v. State of California, 386 U.S. 18 (1967), dealt only with error of constitutional dimension and it is only constitutional error that cannot be deemed harmless unless harmless "beyond a reasonable doubt." 3A C. Wright, Federal Practice and Procedure: Criminal 2d § 855 at 335 (1982); Connecticut v. Johnson, 460 U.S. 73, 88 n. 2 (1983) (Stevens, J., concurring in the judgment)