JOHN TOUHEY *v.* D. H. KING.

JUSTICES OF THE PEACE. *Offenses committed in their presence. Commitment to prison.* The magistrate may order the arrest of any one for a public offense committed in his presence, but he has no power, without an examination or hearing, to commit him to prison. If there be good cause for postponing the hearing, the offender may give bail in a bailable case. If he fail or refuse to give bail, then he may be committed to prison.

FROM MADISON.

Appeal in error from the Law Court of Madison county. H. W. McCORRY, J.

R. W. HAYNES for Touhey.

A. W. CAMPBELL for King.

McFARLAND, J., delivered the opinion of the court.

This is an action for false imprisonment in which the judgment was for the defendant. The plaintiff has appealed in error.

The defendant pleaded, first, not guilty; second, that he was, at the time, mayor of the city of Jackson, and as such, by law, had police authorities over the grounds of the Madison County Agricultural and Mechanical Association, commonly known as the "fair grounds," situated within one mile of the city, and "while the 'fair' was in progress, the plaintiff was guilty of violating the rules and regulations of said

Association, on the grounds thereof, and of otherwise demeaning himself in a disorderly way," for which the defendant caused him to be arrested and imprisoned, etc. Third, the defendant pleads that he was one of the directors of said Agricultural and Mechanical Association, and as such had police jurisdiction over the "fair grounds," for the purpose of preserving order thereon, and that the plaintiff was there and then deporting himself in a disorderly manner, and in violation of the rules and ordinances of said Association, whereby he subjected himself to the arrest of which he complains. There was issue upon the several pleas.

The proof shows that the plaintiff, on the afternoon of the 27th of September, 1875, drove out in his buggy with a pair of horses from the city of Jackson, to the "fair grounds," and very soon after going inside the grounds he was arrested by order of the defendant, brought back to the city on foot, put in the calaboose and kept until after dark, when he was released by the chief of police of the city.

Scawell, who made the arrest, says: "I was on police duty at the fair grounds in 1875 at time of plaintiff's arrest." * * "We had our orders from defendant, D. H. King, who was then mayor of Jackson." * * "Mr. King said something about plaintiff going on the grounds, and told me to arrest him and take him to the station-house, and turn his team over to some body to put in the livery stable. It was some time in the afternoon, not far from three o'clock, I turned the team over to some one who

brought it to the livery stable, and I locked the plaintiff up." He then gives the names of other policemen who he thinks assisted him, and adds: "Touhey was arrested for driving his team where he was not allowed by the regulations of the Fair Association. I thought he was under the influence of whisky, but cannot say he was what you would call drunk. He told me when I arrested him if I would let him go he would go out and leave the grounds. I told him if King said so it was all right. He went over to see King, do not know what passed between them, but he was not released but was sent on to the station-house." Witness then gives further details of the arrest and describes the grounds and the place where the arrest was made, and proves that horses and vehicles were not allowed at that place.

The plaintiff himself testifies, among other things, that when arrested by Scawell, he asked him what he had done, and was told by Scawell that he did not know, but that it was defendant's orders. He proposed to leave the grounds and was told to see defendant, and whatever he said would be all right. He went to where defendant was and asked him what he had done. The only reply defendant made was to call to two of the policemen and order them to take plaintiff to the calaboose and lock him up. Plaintiff again repeated the question, and the same order was given to the policemen with an oath, and he was then taken by the policemen to the calaboose. The defendant was not examined as a witness.

It is shown that about six o'clck, McCabe, the

chief of police, released the plaintiff. This was done at the instance of H. D. Barnell, who agreed to be responsible for plaintiff's appearance at the recorder's office at nine o'clock next morning. McCabe told defendant the same night that he had released plaintiff, and defendant said he was glad of it. Plaintiff met defendant next morning but did not go to the recorder's office. No warrant was at any time taken out, nor other steps in the way of a prosecution.

No written regulations or by-laws of the Association were introduced, but the oral testimony was that plaintiff was driving his team at a place where teams were not allowed, and some two or three witnesses for the defendant testifies that he was driving rapidly and recklessly, and that there was a large number of people present.

There is conflict in the proof as to whether or not he was drunk. There is proof tending to show that when plaintiff was notified that he was driving at the wrong place, he turned back.

Among other things the judge instructed the jury that "It is a misdemeanor at common law, and in this State, for a person to disturb the public order and tranquility," also, "to drive a vehicle recklessly or riotously and through a crowd of people to the hazard of their safety, and more especially is this the case if such driving be done at a fair within bounds set apart for the entertainment of people on foot, and vehicles are forbidden there. And in case of misdemeanors, when committed in presence of magistrates, they have the power to cause the arrest of the party

without warrants, *and to commit to imprisonment.* The mayor of a town is a magistrate under our law, and if you find the defendant was at the time of the arrest the mayor, and that the plaintiff was driving his team in a reckless manner upon the "fair grounds," within the part allowed to the people for entertainment, and to the endangerment of their safety, it was not only proper, but the duty of the defendant to cause his arrest and ejecture from the grounds, and if the imprisonment was not continued beyond a reasonable time in which the plaintiff could have been brought to trial, and if he was discharged when he offered security for his appearance to answer the charge, the defendant would not be guilty."

He refused to charge, at plaintiff's request, that if plaintiff was kept in prison several hours and not brought to trial after being discharged, defendant would be a trespasser *ab initio.*

The verdict was, no doubt, upon the ground that the plaintiff was guilty of a common law misdemeanor in driving his team recklessly in the forbidden parts of the fair ground to the danger of the people there assembled, and this being in the presence of the defendant, he, as a magistrate, was justified in ordering his arrest and imprisonment without warrants.

Neither of the special pleas under which the defendant undertook to justify the arrest set up this defense. They do not distinctly aver that the plaintiff had committed any criminal offense or misdemeanor against the laws of the State. The first of these several pleas avers that the plaintiff "was guilty

Touhey *v.* King.

of violating the rules and regulations of said Association on the grounds thereof, and of otherwise demeaning himself in a disorderly way." The other is in substance the same, that is to say, "that the plaintiff was then and there deporting himself in a disorderly way and in violation of the rules and regulations of the Association." Neither of these pleas aver, with sufficient certainty, that the plaintiff had committed any offense justifying his arrest, either with or without a warrant.

It has not been shown that it is a misdemeanor to violate the rules and regulations of the Association, and the averment that he was demeaning or deporting himself in a disorderly way, is altogether too general, to show the commission of a misdemeanor. At any rate, the pleas do not aver that the plaintiff had been guilty, in the presence of the defendant, of committing the misdemeanor defined in the charge, of recklessly driving his team of horses among a crowd of people.

But if this defense were properly pleaded is the charge correct? Has a magistrate the power, when a misdemeanor is committed in his presence, to cause the arrest of the offender *and commit him to imprisonment?*

"Where a public offense is committed in the presence of a magistrate, he may, by verbal or written order, command any person to arrest the offender, and may therefore proceed as if he had been brought before him on a warrant of arrest": Code, sec. 5036.

That is to say, he may proceed to a hearing and

examination of the case, and to deal with the offender according to law. But "no person can be committed to prison for any criminal matter until examination be first had before some magistrate": Code, sec. 5017.

And "when the defendant is brought before a magistrate, either with or without a warrant, on a charge of having committed a public offense, the magistrate shall inform him of the offense with which he is charged, and to his right to the aid of counsel in every stage of the proceeding": Code, sec. 5048.

"The magistrate shall, as soon as may be after the defendant appears, or if the defendant require the aid of counsel, after waiting a reasonable time therefor, proceed to examine the case": Code, sec. 5050.

"The magistrate may, however, for good cause, adjourn the examination from time to time, without the consent of the defendant, not exceeding three days at any one time": Code, sec. 5051.

"And if in such case the offense is not bailable, or if the defendant does not give the bail required, he shall be committed to jail in the meantime, and if the offense is bailable, the defendant may give bail in such sum as the magistrate directs, for his appearance for such further examination": Code, sec. 5052.

While, therefore, a magistrate may order the arrest of any one for a public offense committed in his presence, he has no power to at once, without an examination or hearing, or without informing the offender of the charge against him, commit him to prison. If there be good cause for postponing the

hearing, and the offender fail to give bail in a bail-
able case, then he may be committed until the hear-
ing. But for a magistrate to order the arrest of
any one for a misdemeanor committed in his pres-
ence, and at once without a hearing, or without cause
postponing the hearing to another time, or giving
him an opportunity to have counsel or give bail,
peremptorily order him to prison is contrary to the
very spirit of our bill of rights and the pointed pro-
visions of our statutes.

We do not mean to abridge the power of officers
to arrest and hold offenders in custody until their
cases are brought to a hearing. But the magistrate
has no power except as above indicated, to order
them to prison in advance of a hearing. And where
one is arrested without warrant—committed to prison
without a hearing—and then discharged without other
steps being taken against him to bring the case to
a hearing, the person making or causing the arrest,
will, according to some of the authorities, be a tres-
passer *ab initio* without regard to whether the per-
son imprisoned may or may not have committed an
offense: *State* v. *Parker,* (75 N. C.,) 22 Am. Rep.,
669; *Broach* v. *Stanton* (108 Mass.,) 11 Am. 390.
But this must not be understood as meaning that
an arrest and prosecution cannot be abandoned with-
out rendering the officer liable as a trespasser from
the beginning. If the arrest, in the first instance,
be lawful, and it be not carried to the extent of an
unauthorized and illegal commitment to prison, then
if by consent or the leniency of the officer, the of-

Touhey *v.* King.

fender be released without other steps being taken, the officer would not be liable.

Whether or not his Honor meant to say that a magistrate has the power to order the arrest of anyone for the commission of a misdemeanor in his presence and to commit him to prison without a hearing, the language has this construction, and it was probably so understood by the jury, as there is no reference to the duty of the magistrate to proceed to examine the case or to allow the offender to give bail, if the hearing be postponed. We think the charge as applied to the pleading and proof, is erroneous in the particulars indicated.

The judgment must therefore be reversed and the cause remanded for a new trial.