STATE OF TENNESSEE, ON RELATION OF MRS. JAMES HARVIE
MORRIS *v.* NATIONAL SURETY COMPANY AND WILLIAM
B. BRAGG.

(*Nashville.*   December Term, 1930.)

Opinion filed June 10, 1931.

548

RICHARD P. DEWS and ELVIN WOODROOF, for plaintiff in error.

C. L. CUMMINGS and ALFRED B. HUDDLESTON, for defendant in error.

MR. JUSTICE SWIGGART delivered the opinion of the Court.

This is an action against a sheriff and the surety on his official bond, for damages for the wrongful death of a prisoner arrested by a deputy sheriff. The suit was brought in the name of the State, on the relation of the widow of the deceased prisoner. The declaration contains four counts, to all of which a demurrer was sustained, and the widow has appealed in error.

The nature of the action is as described in *Brower* v. *Watson*, 146 Tenn., 626, 244 S. W., 362, the wrongful conduct of the deputy sheriff being alleged as constituting the breach of the official bond of the sheriff, for which the suit was brought.

It is contended that such an action cannot be maintained by the widow of the injured person, and that the action could only be prosecuted on the relation of his administrator, as a general asset of the estate of the deceased.

It is our opinion that the action is within the application of Shannon's Code, sections 4025-4027, which provide that "The right of action which a person, who dies from injuries received from another, or whose death is caused by the wrongful act, omission, or killing by another, would have had against the wrongdoer, in case death had not ensued, shall not abate or be extinguished by his death, but shall pass to his widow, and, in case there is no widow, to his children, or to his personal representative, for the benefit of his widow or next of kin, free from the claims of his creditors;" and providing that the action may be instituted by the widow in her own name.

The substantive rights thus conferred by statute upon the widow and children of an injured person are not affected by the form of the action which they may elect to bring to secure redress for the wrongful injury and death. The language of the statute would not support such a distinction.

Numerous grounds of demurrer were assigned in the circuit court, but the brief filed in this court urges only, in addition to the contention above stated, that no cause of action on the sheriff's bond is stated, because the wrongful acts of his deputy, alleged to have been the cause of the injury and death, are shown to have been committed by the deputy while acting beyond the scope of his authority and, therefore, not in his official capacity. Defendants rely particularly upon the cases of *Ivy* v.

*Osborne,* 152 Tenn., 470, 279 S. W., 384, and *McLendon* v. *State,* 92 Tenn., 520, 22 S. W., 200.

The first count of the declaration contains full averments with respect to the official character of William B. Bragg as Sheriff of Rutherford County, and of D. F. Bragg as his deputy. The official bond of the sheriff is copied in full, conditioned, as required by law, to faithfully execute the office of sheriff and perform its duties and functions. The facts alleged with respect to the arrest and death of plaintiff's husband are these. On the night of December 15, 1929, Morris' automobile was driven or thrown from the road and over a bluff, turning over several times before coming to rest in or near a creek. Morris was injured and was lying prostrate on a large rock, obviously suffering great agony, with neighbors and passers-by preparing to take him to a hospital, when the deputy sheriff, D. F. Bragg, arrived. The deputy examined Morris, announced that he was drunk, and arrested him on a charge of public drunkenness committed in his presence. Those standing by said to the deputy that Morris "was seriously injured and should be taken to a hospital." Morris was then "showing plain signs of great suffering and calling for water to drink by reason of the loss of blood," all of which was apparent to the deputy "who saw and knew it." After leaving Morris for a time with two men, the deputy returned and carried him to the jail at Murfreesboro, without taking him before a magistrate, arriving at the jail at 1:30 A. M. No "first aid" or medical aid was provided for Morris during the night. No notice of his condition was given his people or family, although their whereabouts were known to the deputy and to the sheriff. Morris' wife learned of his injury and arrest from other

sources, and arrived at the jail about 10 A. M., making immediate request that the sheriff procure a doctor, which the sheriff did, only after several requests, about 11:30 A. M. Morris was then carried to a hospital, where he died at 5:30 P. M., the same day. His injuries consisted of four broken ribs, two of which had pierced his lungs, a punctured bladder, and other minor internal injuries, from all of which gangrene was produced ''by reason of the lapse of time since the injury.''

This count of the declaration concludes with the averment that the death of Morris was caused by the ''wrongful, unlawful, careless, and negligent conduct of the defendant, William B. Bragg, sheriff, and Dozier F. Bragg, deputy sheriff, in failing to faithfully execute the office of sheriff and perform its duties and functions in the premises, by furnishing the said James Harvie Morris prompt and proper medical and surgical attention and services *after lawfully taking him into their official custody,* as it was their duty so to do.''

It is averred that neither the sheriff nor his deputies made any reasonable effort to obtain medical aid for Morris, although easily available, the county having provided a jail physician whose duty it is to attend such cases when properly notified.

While this count of the declaration does not aver expressly that Morris was in fact publicly drunk in the presence of the deputy sheriff, so as to authorize his arrest without a warrant, it avers that the officer so stated at the time of the arrest, and subsequently avers that the arrest was lawful. In the other three counts it is expressly averred that Morris was in fact publicly drunk, so as to legalize the arrest. Thus the clear inference and intendment of this first count is that the arrest was law-

ful, and the declaration as a whole proceeds on that theory. Considered on demurrer, an averment that an arrest was made would be presumed to mean that a lawful arrest was made, and there is nothing in this count of the declaration to rebut that presumption.

The course of judicial opinion in this State, as evidenced by the cases of *Ivy* v. *Osborne* and *McLendon* v. *State,* cited above, commits us to the principle that a sheriff and his official surety are liable for the consequences of a wrongful act of a deputy only when such act is done by virtue of the deputy's office, as distinguished from an act done under color of office merely. The distinction is stated in Mechem on Public Officers, section 284, quoting from *People* v. *Schuyler,* 4 N. Y., 187, thus: "Acts done *virtute officii* are where they are within the authority of the officer, but in doing them he exercises that authority improperly, or abuses the confidence which the law reposes in him; whilst acts done *colore officii* are where they are of such a nature that his office gives him no authority to do them." Observing this distinction, this court, in *Ivy* v. *Osborne, supra,* held that the sheriff's liability for the wrongful acts of his deputy arises when such acts are "done in an attempt to serve or execute a process, or under a statute giving him the right to arrest without a warrant."

Applying this rule, it is argued for the defendants that, if the arrest of Morris was lawful when made, the custody became unlawful and beyond the scope of the deputy's authority, when he was placed in jail without being carried before a magistrate for examination, the statute providing: "No person can be committed to prison for any criminal matter, until examination thereof be first had before some magistrate." Shannon's Code, sec. 6976; Code of 1858, sec. 5017.

The requirement of this and other sections of the Code, that a person arrested on a criminal charge must be examined by a magistrate before he is committed to prison or jail, was considered by this court in *Touhey* v. *King,* 77 Tenn., 422. In that case the action of a magistrate in peremptorily ordering a prisoner to jail, without a hearing or without cause for postponing the hearing, was denounced as contrary to the very spirit of our bill of rights and statutes. But the court further observed: "We do not mean to abridge the power of officers to arrest and hold offenders in custody until their cases are brought to a hearing."

In the case before us, it is averred that the deputy sheriff reached the jail with his prisoner at 1:30 A. M., and, presumably, he placed the prisoner in confinement there in order to hold him in custody for examination before a magistrate on the following day. If because of the hour of the night when an arrest is made, or other cause, a magistrate is not available, we are not prepared to hold that an officer may not lawfully place his prisoner behind bars until he can be carried before a magistrate for examination. Circumstances may make such action imperative to insure the safe custody of the prisoner until he can be examined by a magistrate.

But even if it be conceded that the imprisonment of Morris without commitment by a magistrate was unlawful, as seems to be the theory of plaintiff, it was only the manner or place of confinement, and not the fact of custody, which was illegal. And neither the place nor fact of confinement is assigned as the cause of the injury and death for which the suit is prosecuted. This is averred merely as matter of inducement or aggravation. The cause of action is stated in the quotation herein-

above made, that the sheriff and his deputy, having the prisoner in lawful custody and knowing his urgent need of medical and surgical attention, failed to faithfully execute the office "by furnishing the said James Harvie Morris prompt and proper medical and surgical attention and services;" it having been previously averred that such medical attention was available and its necessity apparent. In our opinion, this is a charge of wrongful conduct on the part of the sheriff and his deputy in the exercise of authority by virtue of office and not merely under color of authority. It is a charge that lawful custody was improperly exercised, constituting a breach of the bond to faithfully execute the office.

We think the demurrer to the first count of the declaration is without merit, and that it should have been overruled.

The charge made in the second count of the declaration is that the deputy performed his official duty in a careless, reckless, and negligent manner, in that he did not postpone the arrest of Morris until after his friends had carried him to a hospital, which they had started to do, and which they were prevented from doing by the arrest, the deputy "well knowing that Morris' injuries demanded immediate medical and surgical attention." It is averred that this careless and negligent exercise of his power to arrest by the deputy was the direct and proximate cause of the death of Morris.

Exercise of the power of arrest for misdemeanor in such manner as to be directly perilous to human life is not authorized by law. "It cannot be assumed by arresting officers that the power of life or death over persons accused or suspected of misdemeanor has been extended to them; and they have no right to sacrifice

human life or to shed blood to prevent the escape of petty offenders." *Human* v. *Goodman,* 159 Tenn., 241, 244, 18 S. W. (2d), 381. This language was used in condemning the act of an officer in shooting a misdemeanant to prevent his escape. It is equally applicable to the arrest of an injured person, obviously in need of immediate medical or surgical attention, when the offense charged is a petty misdemeanor and the effect of the arrest is to prevent the administration of medical aid without which it is apparent his life will be endangered. Whether an arrest under the circumstances pleaded can be justified according to the principle which requires peace officers as well as private citizens to perform their duties, official as well as private, with due regard to the safety of others, may well become a question of fact for the decision of a jury, if the facts pleaded are supported by evidence. We think the demurrer to this count of the declaration should have been overruled.

The third count of the declaration avers that the confinement of Morris in jail during the remainder of the night, after the arrest, and until nearly noon of the following day, under the circumstances stated in the first count, was an unreasonable, careless, reckless, and negligent exercise of official authority, whereby Morris was prevented from obtaining the necessary medical aid, which would have saved his life, and that such action on the part of the sheriff and his deputies was the proximate and direct cause of the prisoner's death.

The fourth count of the declaration assigns as the cause of death the failure of the deputy to carry his prisoner before a magistrate, before placing him in jail. It is averred therein that if a prompt hearing had been

accorded, the necessary medical aid would have **been** provided and the death would have been prevented.

■ The unlawful conduct with which the deputy is charged in these counts concerned and affected a prisoner who, it is expressly averred, had been lawfully arrested. As indicated hereinabove, we are of opinion that the fact that the arrest and custody were lawful in inception distinguishes the case before us from the cases of *Ivy* v. *Osborne* and *McLendon* v. *State, supra;* and we hold that unlawful treatment by a deputy sheriff of a prisoner whom he has lawfully arrested, whereby the prisoner is injured, is a wrong done by virtue of his office, for which the sheriff and his surety are liable. It is a failure to properly perform an official duty to the prisoner lawfully in his custody. We think the reasoning by which the conclusion of the court was reached in *McLendon* v. *State,* demonstrates the correctness of the conclusion we reach here. With respect to an unlawful arrest the court there said that since the law forbade the arrest, the bond did not contemplate such an act and was not breached by it. Here the law authorized the arrest, and it was the duty of the deputy to so employ his authority as not to unnecessarily and unlawfully injure his prisoner. A breach of this official duty is a breach of the bond, as charged in the declaration.

The judgment sustaining the demurrer to the several counts of the declaration is reversed, and the case remanded for further proceedings. The defendants will pay the costs of the appeal.