MARABLE et al. v. STATE ex rel. WACKERNIE.
—222 S. W. (2d) 234.

Middle Section.   March 26, 1949.

Petition for Certiorari denied by Supreme Court, July 9, 1949.

H. T. Finley, Homer B. Weimar, Thomas O. H. Smith and H. Frank Taylor, all of Nashville, for plaintiffs in error.

S. McP. Glasgow, Jr., Hugh C. Gracey and Albert Ewing, Jr., all of Nashville, for defendant in error.

HICKERSON, J.  This suit was brought against Jim Marable and The Fidelity & Casualty Company of New York, surety on his bond as Constable of Davidson County, Tennessee, to recover damages for the alleged wrongful killing of Robert Marcel Wackernie by Constable Jim Marable.

Defendants entered pleas of not guilty, self-defense, justification, and nil debit.

Judgments upon a verdict of the jury were entered for plaintiff against Jim Marable in the sum of $12,500.00 and against the Fidelity & Casualty Company of New York in the sum of $4,000.00, the limit of the bond.  Defendants appealed in error to this court.

Assignments of error I, II, III, and IV raise the question that the trial judge committed error when he refused to direct a verdict for defendants upon their motion.

██ . The court has no constitutional right to direct a verdict when the evidence is in conflict.  When considering a motion for directed verdict, all evidence favorable to the party against whom the motion is made, with all reasonable inferences from the evidence favorable to such party, must be accepted as true; and all countervailing evidence discarded.  Tennessee Central Railway Co. v. McCowan, 28 Tenn. App. 225, 188 S. W. (2d) 931; Morgan v. Tennessee Central Railway Company, Tenn. App., 216 S. W. (2d) 32.

There is evidence in the record which would support the following finding of facts by the jury:

Marcel Wackernie was twenty-three years old when he was killed. He had served several years in the armed forces of the United States. Miss Martha Nell Zanoni and he were engaged to be married on November 8, 1946.

On November 2, 1946, these young people went riding in an automobile. They parked their car headed west on the old Charlotte Pike, near the new Charlotte Pike in Davidson County, Tennessee, two miles from Nashville, at eight thirty o'clock in the evening. For a few minutes they sat in their parked car laughing and talking and discussing their wedding plans. An automobile came meeting them on this road and stopped a short distance in front of them. Defendant, Jim Marable, and James Swafford got out of this car and started towards the car in which this young couple were sitting. James Swafford carried a flashlight. Jim Marable carried a pistol, and he was staggering drunk. Neither of these men were in uniform and they gave the young couple no information nor indication that they were officers. The young couple did not know them at that time.

Mr. Wackernie and Miss Zanoni were committing no crime. They were behaving and acting in a normal, lawful, and seemly manner.

When defendant and Swafford approached the car of Marcel Wackernie, defendant was waving a pistol, and inquired what the young people were doing. Marcel asked him what he wanted and defendant ordered Marcel out of his car and forced him to obey the order at the point of a pistol in the hands of this Constable defendant, who was drunk.

Marcel Wackernie had a pistol in the car with him which had been given him as a keepsake of the war.

When he got out of the car, defendant ordered him to drop the gun, which he did. Defendant opened the door of the car after Marcel got out and the young lady inquired what he wanted. Marcel warned defendant not to harm the young lady. Thereupon, defendant closed the door of the car.

When Marcel dropped the gun a scuffle took place between him and defendant. Marcel was shot in the scuffle by defendant. The aggressor in the affray was defendant. Marcel was reasonably justified in resisting the unlawful and unprovoked and uncalled for assault made upon him and his sweetheart by defendant.

Marcel got into his car after he was shot and had his own pistol and the pistol of defendant in his hands. He drove a few feet and threw the pistol of defendant out of the car, calling and telling defendant that he was returning his gun. This young couple drove to the home of Miss Zanoni where an ambulance was called and the young man was taken to the hospital. He died early the next morning, November 3, 1946, from the effect of the pistol shot which he received in this affray.

At the time of this trouble, defendant was a Constable in Davidson County, Tennessee, sworn to faithfully perform the duties of his office. One duty was that he conserve the peace. Defendant, The Fidelity & Casualty Company of New York, had signed a bond as his surety, conditioned that Jim Marable would faithfully discharge all the duties of his office as Constable.

Applicable Code Sections are:

Code Section 723. ''Bond.—Before entering upon the duties of his office, every constable shall give bond before the county court, with two or more good sureties, to be approved by said court. Said bond shall be in a penalty of not less than four thousand nor more than eight thou-

sand dollars, at the discretion of said court, and shall be payable to the state, and conditioned for the faithful discharge of the duties of said office, and the prompt payment to the proper person of all moneys collected or received by him by virtue of his office. Said bond shall be recorded and filed.''

Code Section 726 ''Oath of constable.—Every constable shall take an oath that he will well and truly serve the state in the office of constable; that he will cause the peace of the state to be kept, to the best of his power; that he will arrest all such persons as go in his sight armed offensively, or who commit any riot, affray, or other breach of the peace; that he will use his best endeavor, on complaint made, to apprehend all felons, rioters, or persons riotously assembled; and that, if such persons flee or make resistance, he will pursue, and make hue and cry, according to law; that he will faithfully, and without delay, execute and return all lawful process to him directed; and that he will well and truly, according to his power and ability, do and execute all other duties of his office.''

Code Section 1823. ''Form, condition, and requisites of official bonds.—The bonds of all public officers required by law to give bond shall, unless it is otherwise provided, be made payable to the state, with such sureties as the officer or court required to approve the same is satisfied are sufficient, and conditioned, in all cases in which a different condition is not prescribed, faithfully to discharge the duties of such office during the time he continues therein, or in the discharge of any part thereof.''

Code Section 1833. ''Obligation of bond.—Every official bond executed under this Code is obligatory on the principal and sureties thereon—

"(1) For any breach of the condition during the time the officer continues in office or in the discharge of any of the duties of such office.

"(2) For the faithful discharge of the duties which may be required of such officer by any law passed subsequently to the execution of the bond, although no such condition is expressed therein.

"(3) For the use and benefit of every person who is injured, as well by any wrongful act committed under color of his office as by the failure to perform, or the improper or neglectful performance, of the duties imposed by law."

██ Under the plain meaning of these statutes a constable and the surety on his official bond are liable to any person injured by a wrongful act of such officer done under color of his office or by virtue of his office. There are decisions of our Supreme Court which hold that the sureties on an officer's bond are only liable for his acts done by virtue of his office. These decisions, however, deal only with the common-law liability of the sureties on an officer's bond with no reference to the liability imposed upon such sureties by the foregoing statutes. (A full and complete discussion of this subject is found in an opinion of this court, prepared by Judge Felts, in the case of State ex rel. Hattie Harbin, Administratrix, v. Robert Dunn et al. Davidson Law. Opinion filed November 13, 1943, unreported,[1] since no petition for certiorari was filed.)

Were acts of Jim Marable done under the color of his office?

██ Concerning the term "color of office" 15 C. J. S., Color or Colour, pages 235-236, provides:

---

[1]Not designated for publication.

''A phrase generally defined as meaning a claim or assumption of right to do an act by virtue of an office, made by a person who is legally destitute of any such right; a fraudulent act of an officer in the line of his duty; an act evilly or unjustly done, by the countenance of an office; a pretended, not a real, exercise of an officer's jurisdiction; a pretense of official right to do an act, made by one who has no such right; a wrong committed by an officer under the pretended authority of his office; champerty; color of official authority; the use of official authority as a pretext or cover for the commission of some corrupt or vicious act; also corruptly or with wicked and vicious motive; having the appearance, especially the false appearance, of right.''

The plain inference from all the proved facts and circumstances in this case is that Jim Marable was purporting to act as an officer when he committed the wrongs about which plaintiff complains. Certain it is that he would never take the position that he was acting as a private citizen. He was using his official position as a basis for his interference with these young people and his unlawful conduct toward them.

■ We think there was sufficient evidence to take the case to the jury on the determinative questions of fact, and the trial judge correctly so held.

■ ■ It is an elementary fundamental rule that the plaintiff must, in jury cases, offer evidence which tends to prove the case charged in his declaration in order to have the case submitted to a jury. The purpose of judicial proceedings is to establish the facts and the issues in dispute and apply the law to such facts. If the proof of plaintiff tends to establish such facts, and defendant, through his own knowledge or through the knowledge of witnesses peculiarly within his keeping, may fully dis-

close to the court all the facts and fails to do so, there is a strong presumption that such facts are adverse to his interests and contentions. We do not hold that the failure of a defendant to produce such witnesses would take the place of the proof which plaintiff must introduce to make out his case. But the inferences favorable to the contentions of plaintiff are strengthened and supported by the failure of defendant and the witnesses peculiarly in his keeping to testify when they know all the facts.

■ Take the instant case: Jim Marable was charged with: (1) being on duty as a constable in a drunken condition; (2) waving and brandishing a pistol and forcing this young man to get out of his car without telling him that defendant was an officer; (3) being in civilian clothes and provoking this trouble when the young couple were acting in a normal, lawful manner; and (4) shooting the young man and killing him. In the face of these charges, which the inferences from proved facts and circumstances tend to support, defendant and his companion remained silent. They knew all the facts. They elected not to testify. The conclusion is inescapable that the established facts and unfavorable inferences towards defendant from the evidence introduced by plaintiff would not be as detrimental to defendant's theory of the case as the truthful testimony which he and his companion would have to give if they took the witness stand. Fisher v. Insurance Company, 124 Tenn. 450, 138 S. W. 316, Ann. Cas. 1912D, 1246.

■ Defendants assign as error that the trial judge admitted in evidence the following testimony of Dr. Charles R. Zirkle:

"Q. Did he tell you he was wounded? A. Said he was shot.

"Q. Did he say by whom? A. 'I was shot by a man who had glasses on.'"

Marcel Wackernie made this statement to the physician at the hospital about an hour after he was shot. He was giving the physician an account of the shooting. In the meantime he had told his sweetheart to hide his own pistol and she had done so. The testimony was not admissible under the authority of Johnson v. Copeland, 178 Tenn. 431, 158 S. W. (2d) 986; Gardner v. Burke, 28 Tenn. App. 119, 187 S. W. (2d) 25; Bell v. Travelers' Insurance Co., 18 Tenn. App. 552, 79 S. W. (2d) 824; Gulf Refining Co. v. Frazier, 15 Tenn. App. 662.

There is other evidence in the record, with no countervailing evidence, which tends to prove that Jim Marable shot Marcel Wackernie. Wherefore, the admission of the testimony of Dr. Zirkle, though erroneous, is not reversible. Irvine v. State, 104 Tenn. 132, 56 S. W. 845.

By assignments VI, VII, and VIII defendants make the question that the court erroneously charged the jury that defendant could not rely upon the law of self-defense if he failed to disclose that he was an officer, provoked the trouble, and Marcel Wackernie resisted his interference with him and his companion on the ground that he thought they were being held up by highwaymen. Defendants contend there is no evidence to support the charge that this young couple thought they were being held up by highwaymen. There is no direct evidence of the mental attitude of these young people in this regard. The circumstantial evidence, however, would certainly tend to support a finding by the jury that Marcel Wackernie had such thoughts. A contrary inference and finding would hardly be justified, especially in view of the fact that defendants introduced no testimony. Self-defense is not available to one who provokes an affray,

and continues his aggressive acts until his adversary is killed. Foutch v. State, 95 Tenn. 711, 34 S. W. 423, 45 L. R. A. 687; Irvine v. State, supra; Cooper v. State, 123 Tenn. 37, 138 S. W. 826.

By assignments XII and IX defendants state the trial court erred in admitting testimony of an expert witness, Harry Creighton, and in charging the jury in regard to such evidence.

One issue in the case was this: Did Jim Marable shoot Marcel Wackernie, or did the young man shoot himself? In an effort to show that defendant shot Marcel Wackernie, plaintiff offered the testimony of an expert witness, who made tests or experiments, and then testified that there would be powder burns on clothing if the pistol were fired at a distance of fifteen inches from the clothing, but there would be no powder burns if the pistol were fired twenty inches from the clothing. There were no powder burns on the clothes worn by Marcel Wackernie when he was shot. Plaintiff contends the young man could not have held the pistol at a distance of twenty inches from his body and have shot himself as he was shot.

In Fisher v. Travelers Insurance Co., 124 Tenn. 450, 470, 138 S. W. 316, 320, Ann. Cas. 1912D, 1246, it is stated: "As to the competency of experiments, this has been settled in Tennessee by numerous cases. Byers v. [Nashville C. & St. L.] Railroad, 94 Tenn. 345, 29 S. W. 128, and cases cited therein; Boyd v. State, 82 Tenn. 161; Lipes v. State, 83 Tenn. 125, 54 Am. Rep. 402; Mississippi & Tennessee R. R. Co. v. Ayers, 84 Tenn. 725."

The proved facts surrounding the experiment justified the admission of the testimony of Harry Creighton in regard to the facts disclosed by the experiment. Defendants had a perfect defense to the fact sought to be proved

by the experiment and the testimony in regard thereto—that defendant shot Marcel Wackernie—by the testimony of Jim Marable that he did not shoot him and the testimony of James Swafford to the same effect, if in fact Jim Marable did not shoot Marcel Wackernie.

▮ The charge which the court gave in regard to the expert testimony was correct and very fair to defendants.

Assignment X is: "These defendants were greatly prejudiced by the court's charge of the law common to negligence cases after which any requests from defendants for special charges on the law of assault could not have been effective to cure this error."

The assignment is too general. Rule 11 (3) of this court provides: "When the error alleged is upon the charge of the court, the part complained of, whether it be instructions given or instructions refused, shall be set out."

The portion of the charge about which complaint is made in assignment X does not constitute reversible error. It affirmatively appears that this part of the charge did not affect the verdict adversely to defendants. It was favorable to defendants. Code Section 10654.

There is no error in the judgment of the lower court. Let it be affirmed with interest and costs.

Felts, J., concurs.

Howell, J., not participating.