**J. C. WATERS and Yvonne Waters**

**v.**

**Amos BATES, Austin McClary, Polk County, Tennessee, and Saint Paul Fire and Marine Insurance Company.**

**Civ. A. Nos. 4028, 4029.**

United States District Court
E. D. Tennessee, S. D.
March 16, 1964.

---

Berke & Berke, T. Gene Sinor, Chattanooga, Tenn., for plaintiffs.

Spears, Moore, Rebman & Williams, H. Keith Harber, Chattanooga, Tenn., for defendants.

FRANK W. WILSON, District Judge.

These cases are now before the Court upon motions by the defendants, Austin McClary and Saint Paul Fire and Marine Insurance Company, for judgment notwithstanding the verdict or, in the alternative, for a new trial. Also before the Court is a motion for new trial filed by the defendant, Amos Bates.

The background of this case is as follows: Upon November 10, 1962, an automobile accident occurred in Polk County, Tennessee. Involved in the accident was an automobile owned by Polk County and driven by Amos Bates who was acting in his capacity as a deputy sheriff under Polk County Sheriff Austin McClary. The other automobile involved was driven by the plaintiff, Yvonne Waters. Suits were filed by Yvonne Waters for personal injuries sustained in the accident and by her husband, J. C. Waters, for loss of his wife's services and her medical expenses against Deputy Sheriff Amos Bates, Sheriff Austin McClary, Polk County, Tennessee, and Saint Paul Fire and Marine Insurance Company, the surety upon the sheriff's official bond. A jury verdict was returned for each plaintiff against all four defendants, the verdict in favor of Yvonne Waters being in the sum of $50,000 and the verdict in favor of J. C. Waters being in the sum of $15,000. However, by stipulation prior to the trial it was agreed that the defendant, Polk County, would in no event be liable in excess of the aggre-

gate sum of $20,000 in both cases, the extent to which it had waived its governmental immunity by the purchase of liability insurance. That amount has been paid into court and Polk County has discharged its obligation under the jury verdict and judgment.

■ The motion for new trial filed on behalf of the defendant, Amos Bates, will be considered first by the Court. It is based upon the general grounds that the verdict is contrary to the law and evidence and is excessive. Amos Bates was the driver of the automobile which struck the automobile driven by the plaintiff, Yvonne Waters. Evidence of proximate negligence upon his part is clear and abundant, if not undisputed. The testimony including his own testimony, reflects that the accident occurred when he drove upon the wrong side of the highway and struck the plaintiff's automobile. The verdict on damages is likewise supported by the evidence. It appears that the plaintiff sustained extensive injuries, including a broken leg, multiple pelvic fractures, multiple rib fractures, a punctured lung, and fractures of both wrists. Non-union of one wrist resulted in a surgical resetting of the wrist almost a year after the accident, with the arm remaining in a cast and the prognosis being uncertain at the time of the trial. The motion for new trial on behalf of the defendant, Amos Bates, should be overruled as to each ground thereof.

Identical motions for judgment notwithstanding the verdict have been filed by the defendants, Austin McClary and Saint Paul Fire and Marine Insurance Company. They will be considered by the Court next. Grounds advanced in support of the motion are that (1) the evidence shows that Amos Bates was not performing an official act at the time of the accident, (2) the evidence failed to show that Amos Bates was acting under the direction of the sheriff at the time of the accident, (3) the evidence failed to show that Amos Bates was performing any act at the time of the accident that required the authority of the sheriff's office, and (4) the evidence failed to show

that Amos Bates was exercising the authority of his office or attempting to exercise such authority at the time of the accident.

■ This Court must look to the law of the State of Tennessee in determining the liability or non-liability of the sheriff and his surety for the acts of his deputy. Erie Railroad ·Co. v. Tompkins, (1938) 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 118. There are numerous reported cases in Tennessee with regard to the liability of a sheriff and surety upon a sheriff's official bond for the act of a deputy. However, in spite of the abundance of authority, there does not appear to be any Tennessee case involving a similar fact situation to that here confronting the Court. For the most part, the facts relevant to a determination of the liability of the sheriff and the surety upon his bond are not in dispute. The evidence, when considered in the light most favorable to the plaintiff, shows that Amos Bates was on authorized routine patrol duty at the time of the accident, that he was in the process generally of enforcing the laws of the State, and that he had checked one beer tavern and was enroute to check another when the accident occurred. He had no specific assignment, no specific investigation to make, nor any official paper to serve or execute. He was under no specific orders from the sheriff.

It would seem clear that under the facts stated above neither the sheriff nor his surety would be liable for the torts of a deputy sheriff upon the usual principles of *respondeat superior*. Both the sheriff and the deputy sheriff are employees of the county. The torts of a subordinate employee are not ordinarily imputed to a supervisor or department head under the usual principles of *respondeat superior*. Likewise, the general rule is that public officials are not liable for the misconduct, negligence or omissions of their subordinates. Donegan v. Beasley, (1944) 27 Tenn.App. 369, 181 S.W.2d 379; 43 Am.Jur., "Public Officials," Sec. 281. However, different rules appear to have developed with regard to the lia-

bility of a sheriff for the torts of a deputy sheriff. The doctrine of governmental immunity, together perhaps with the nomenclature of the officers as "sheriff" and "deputy sheriff" appear to have led the courts into the adoption of rules imputing liability to a sheriff where the usual rules of *respondeat superior* would not impose such vicarious liability. Since the county can either or both do no wrong or ill afford to bear the burden of wrongs committed by its employees, the courts appear to have set out to assist the party injured by a usually impecunious county employee by imputing liability to the sheriff under circumstances often confusingly defined. The latter individual is presumably better able to carry this imputed burden than is the county. Then too, if the sheriff had had the good fortune of being dessignated "Head of the Department of Public Safety" or "Chief of Police," rather than "Sheriff," or had he had the foresight or lack of vanity, so as not to name his subordinates after himself, some confusion in legal circles might have been avoided.

As developed at common law, a sheriff was said to be liable for the acts of his deputy committed by virtue of his office, but only for acts *virtute officii*. State ex rel. Harbin v. Dunn, 39 Tenn.App. 190, 282 S.W.2d 203 (1943). The sheriff was not liable at common law for a deputy acting by color of office or acting *colore officii*. The rules thus stated were adopted in Tennessee. See McLendon v. State, 92 Tenn. 520, 22 S.W. 200, 21 L.R.A. 738 (1893); Ivy v. Osborne, 152 Tenn. 470, 279 S.W. 384 (1925); State ex rel. v. National Surety Co., 162 Tenn. 547, 39 S.W.2d 581 (1930); Note, 22 Tenn.L. Rev. 1074. There is a great deal of dis-

cussion in the Tennessee cases with regard to the distinction between "virtue of office" and "color of office". As stated in the case of State ex rel. Blanchard v. Fisher, 193 Tenn. 147, 245 S.W.2d 179 (1951):

> "Under color of office is defined as: A pretense of official right to do an act made by one who has no such right * * * and is distinguished from 'by virtue of office' implying lawful power."

The usual example of an official act under color of office is the instance of an officer attempting to make an illegal arrest and shooting the subject in the process, as exemplified in the case of Marable v. State, 32 Tenn.App. 238, 222 S.W.2d 234 (1949). Under the facts of the principal case no contention is made that the acts of the deputy here complained of were committed under color of office, or that he was acting under any *pretense* of authority at the time of the accident. Rather, it is agreed that no issue in this regard exists in the case.

■ Moreover, the distinction between acts of a deputy by virtue of office and by color of office was later held to be abolished by statute in Tennessee, with a sheriff and his surety being held liable for the acts of a deputy committed either by virtue of office or by color of office, at least where suit was brought on the sheriff's official bond. State ex rel. Harbin v. Dunn, 39 Tenn.App. 190, 282 S.W.2d 203 (1943). See also Marable v. State, 32 Tenn.App. 238, 222 S.W.2d 234 (1949). The plaintiff has placed considerable emphasis upon the sheriff's surety bond and the statutory definition of the obligations covered by the bond, as set forth in T.C.A. Sec. 8–1920,[1] as form-

---

1. Tennessee Code Annotated, Section 8–1920. "Obligations covered by bonds.— Every official bond executed under this Code is obligatory on the principal and sureties thereon—
"(1) For any breach of the condition during the time the officer continues in office or in the discharge of any of the duties of such office,
" (2) For the faithful discharge of the duties which may be required of such of-
ficer by any law passed subsequently to the execution of the bond, although no such condition is expressed therein.
"(3) For the use and benefit of every person who is injured, as well by any wrongful act committed under color of his office as by the failure to perform, or the improper or neglectful performance, of the duties imposed by law."

ing a basis for imputing to the sheriff and the surety the negligence of Amos Bates. However, it is clear that the official bond of a sheriff creates no new cause of action against him and that his official bond binds him no further than he would be liable without it, at least insofar as acts of a deputy committed by virtue of office are concerned. 80 C.J.S. Sheriffs and Constables § 177. The above cited statute merely codified a common law rule in this respect. State v. Dunn, supra. While the statute and the bond are material in determining the liability of the surety, there is no issue here but that the surety would be liable under the same circumstances which would impute liability to the sheriff, namely when the deputy was acting by virtue of office.

This Court must therefore determine whether the negligence of the deputy, Amos Bates, was committed "by virtue of office" as those terms are defined and established in the cases in this State. Stated in less technical language, and in terms of the facts of this case, the issue is whether a sheriff and his surety are liable for the negligence of a deputy sheriff in driving a patrol car on routine law enforcement duty.

It is contended on behalf of the surety that to extend the coverage of the bond to the situation presented in this case would be to convert the bond into an automobile liability insurance policy. This, however, is not pertinent argument before a federal court seeking to determine the state law, at least until it can be ascertained whether any state law exists upon the subject. Each of the parties to this lawsuit has cited numerous and divergent authority from other jurisdic-

tions upon this issue.[2] However, once again, before reference to authority from other jurisdictions would be appropriate, the Court must first determine if this issue is resolved in either the case or statutory law of this State.

In defining an act committed by virtue of office, the Supreme Court of Tennessee laid down a very precise, exact—and narrow—rule in the case of Ivy v. Osborne, 152 Tenn. 470, 279 S.W. 384 (1925). In denying liability of the sheriff and his surety for the act of a deputy in making an illegal arrest, the Court there stated:

" * * * In order to carry the liability to the principal, the act of the deputy must be by virtue of the office, and in interpreting this rule it is held that, in order for the deputy's act to have that character, *it must be done in an attempt to serve or execute a process, or under a statute giving him the right to arrest without a warrant, and if he acts otherwise he is doing so as an individual.* * * * *"

In 1930 the case of State ex rel. v. National Surety Co., 162 Tenn. 547, 39 S. W.2d 581, was decided. There a deputy had arrested a driver at the scene of an accident for public drunkenness. While in custody the prisoner died from injuries received in the accident without ever receiving medical attention. In an action against the sheriff and his surety, the Court, citing Ivy v. Osborne, held that the unlawful treatment by a deputy sheriff of a prisoner who was under lawful arrest was a wrong done by virtue of office for which the sheriff and his surety would be liable. Although strictly speaking there was here involved no attempt to serve or execute a process nor

2. The plaintiff relies upon the cases of Duran v. Mission Mortuary, 174 Kan. 565, 258 P.2d 241 (1953); Jones v. Buckelew, 247 Ala. 475, 25 So.2d 23 (1946); and Hanratty v. Godfrey, 44 Ohio App. 360, 184 N.E. 842 (1932), as support for the proposition that a sheriff and his surety are liable for the deputy's negligent operation of an automobile in the performance of the deputy's duties. The defendant relies upon the cases of Nelson v. Bartell,

4 Wash.2d 174, 103 P.2d 30 (1940); Gray v. De Bretton, 192 La. 628, 188 So. 722 (1939); Culpepper v. United States Fidelity & Guaranty Co., 199 Ga. 56, 33 S.E. 2d 168 (1945); and Clement v. Dunn, 114 Cal.App. 60, 299 P. 545 (1931) as authority denying liability upon the part of a sheriff and his surety for negligence of a deputy while driving a patrol car in performance of his duties.

to make an arrest without a warrant, but rather an extension of the definition of acts committed by virtue of office to include mistreatment of prisoners lawfully arrested, it would appear that the Ivy v. Osborne and State ex rel. v. National Surety Co. cases established the law of Tennessee as being that an unlawful injury inflicted by a deputy either before or after a lawful arrest would fall within the definition of an act committed by virtue of office.

Once again in 1951 in the case of State ex rel. Blanchard v. Fisher, 193 Tenn. 147, 245 S.W.2d 179, the Court reaffirmed the definition of virtue of office as stated in Ivy v. Osborne. There a deputy, while attempting a lawful arrest, shot a still operator to prevent his escape. The Court held this unlawful act by a deputy committed in the course of a lawful arrest to be an act committed by virtue of office, for which the sheriff and his surety were liable.

A similar situation was again presented in the case of Jones v. State, 194 Tenn. 534, 253 S.W.2d 740 (1953). There a deputy had shot the tire of an automobile of a fleeing misdemeanant while attempting an arrest without a warrant. As a result the automobile went out of control and the misdemeanant was killed. The Court held the sheriff and his surety were liable for the wrongful act of the deputy under these circumstances. The facts of the case would appear to clearly fall within the definition of an act committed by virtue of office as stated in Ivy v. Osborne. Although the results of the opinion are clear, the reasoning by which the Court reached the results are not so clear. The Court there spoke of Ivy v. Osborne and State ex rel. Blanchard v. Fisher as showing that the wrongs of the deputies complained of were committed "while in the performance of their official duties." Again the Court stated "liability of the Sheriff would always attach when and if the wrong of the Deputy was committed by virtue of an official act, *the Sheriff being held responsible under the doctrine*

*of agency."* [Italics supplied.] Finally, the Court stated:

"The Court of Appeals' final conclusion is correct upon the theory (1) that the said Deputies were acting officially, and that the Sheriff ratified the wrongful act; (2) the Sheriff assigned them an official car to patrol the highways of Knox County, and there is material evidence that they were so acting."

In the Jones case the Court appears to speak in terms of "agency" and of "official duties" in defining the circumstances under which the wrongs of a deputy will be imputed to his sheriff and his surety. At the same time, however, the Court cited Ivy v. Osborne, supra, and State ex rel. Blanchard v. Fisher, supra, with approval.

Again in 1958 the Court of Appeals of Tennessee in the case of State ex rel. Coffelt v. Hartford Accident & Indemnity Co., 44 Tenn.App. 405, 314 S.W.2d 161, affirmed the liability of the sheriff and his surety for the act of a deputy in shooting a misdemeanant to prevent his escape. The Court there cited the language in Jones v. State to the effect of "the sheriff being held responsible under the doctrine of agency." However, once again, the Court also cited Ivy v. Osborne and State ex rel. Blanchard v. Fisher as controlling authority.

In spite of the reference to "agency" in Jones v. State and in State ex rel. Coffelt v. Hartford Accident & Indemnity Co., nowhere have the Tennessee cases defined virtue of office in terms synonymous with "scope of employment" as those terms are used in the law of agency. Nowhere yet has the case of Ivy v. Osborne been cited except with full approval. In the Ivy case the Court stated:

"The Tennessee courts follow the rule last stated, upon the reasoning that the deputy acts in lieu of the sheriff and in his name, and representing the sheriff officially, *and not as an agent,* the authority of the

468

deputy is limited to official acts." [Italics supplied.]

Nowhere yet have the Tennessee cases held that negligent driving of an automobile by a deputy while on routine patrol duty was an act by virtue of office. This Court can only conclude that the Tennessee courts have not as yet extended the definition of virtue of office to this extent and that Ivy v. Osborne remains the law of this State with reference to acts committed by virtue of office.

The Court is of the opinion, therefore, that the motions for a judgment notwithstanding the verdict filed by the defendants, Austin McClary and Saint Paul Fire and Marine Insurance Company, should be granted.

An order will enter in accordance with this opinion.