IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 24, 2004 Session

# A.D. Doe and M.A. Doe v. May et al.

**Appeal from the Circuit Court for Knox County**
**Wheeler A. Rosenbalm, Judge**

**No. E2003-1642-COA-R3-CV - FILED JUNE 29, 2004**

The plaintiff A.D. Doe for himself and his daughter M.A. Doe sued the Sheriff of Knox County and the County itself for damages when M.A. Doe was allegedly raped by a deputy sheriff. The complaint alleged that the sheriff was liable on his bond and on his oath of office and that Tenn. Code Ann. § 8-8-302 imposed liability on the County because the deputy was acting "by virtue of or under color of the office." The Circuit Court of Knox County dismissed the complaint against the Sheriff and the County for the failure to state a claim. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed**

BEN H. CANTRELL, RETIRED JUDGE, delivered the opinion of the court in which HERSCHEL P. FRANKS, J. and D. MICHAEL SWINEY, J. concurred.

Herbert Moncier, Knoxville, Tennessee, for the appellant.

Mary Ann Stackhouse, Knoxville, Tennessee, for Knox County and the Sheriff in his official capacity.

Dean B. Farmer, Knoxville, Tennessee, for the Sheriff in his individual capacity.

## OPINION

### I.

In a complaint filed on March 8, 2002, A.D. Doe alleged that he was the father of M.A. Doe and that Shane May, a Knox County deputy sheriff, in 2000 and 2001 had sexual intercourse with M.A. Doe, when she was fourteen and fifteen years of age. The complaint alleged the

defendant May's conduct was done by virtue of and under the color of his office and that Knox County was liable for these wrongs pursuant to Tenn. Code Ann. § 8-8-302.

The complaint also alleged that the Sheriff of Knox County selected unknown persons, identified in the complaint as John and Jane Does, to conduct an investigation for the Sheriff Department's internal affairs and detective units; that the investigation was designed to cover up defendant May's conduct, and that as a result of the deficient investigation, defendant May avoided criminal charges and was allowed to resign rather than being discharged.

For the various alleged reasons, A.D. Doe demanded judgments against the Sheriff individually, the County, and the other individual defendants in the amount of $100,000 for himself and $250,000 for his daughter.

The Sheriff and Knox County challenged the complaint with a motion to dismiss. The motion asserted that the Complaint failed to state a claim against the Sheriff or the County because the defendants enjoyed certain immunities, because there is no cause of action for failing to conduct an investigation or for conducting a deficient investigation, and because the acts alleged to have been committed by defendant May were criminal acts and could not have been committed by virtue of his office or under color of law.

The Sheriff made a similar motion on behalf of himself, individually.

In response to the defendants' motions, the plaintiffs filed their affidavits, which the Court ultimately considered as more definite statements. Even considering these additional facts, the Court dismissed the complaint for the failure to state a claim on which relief could be granted.

## II.

At the outset it is useful to note what this action is <u>not</u>. It is not a claim under the Tennessee Governmental Tort Liability Act, Tenn. Code Ann. § 29-9-101 et seq., or a federal tort claim under 42 U.S.C. § 1983. It is an action seeking to impose liability on the County for the wrongs of deputy May and two other unnamed deputies, and it is an action to impose liability on the sheriff individually for the same malfeasance and the sheriff's own part in the aborted investigation. This appeal does not concern the individual liability of deputy May.

## III.

### THE APPLICABLE LEGAL STANDARDS

#### a.

A motion under Tenn. R. Civ. P. 12.02(6) to dismiss for the failure to state a claim upon which relief can be granted admits the truth of all relevant and material averments in the complaint. <u>McClung v. Delta Square, Ltd.</u>, 937 S.W.2d 891 (Tenn. 1996). The motion does not, however, admit the truth of the legal conclusions alleged. <u>Riggs v. Burson</u>, 941 S.W.2d 44 (Tenn. 1977); <u>Swallows v. Western Electric, Co.</u>, 543 S.W.2d 581 (Tenn. 1976). The trial judge should construe the complaint liberally in favor of the plaintiff and should deny the motion unless it appears that the plaintiff can prove no set of facts in support of the claim that would

2

entitle the plaintiff to relief. <u>Waller v. Bryan</u>, 16 S.W.3d 770 (Tenn. Ct. App. 1999). The trial court's decision is a legal conclusion that comes to this Court without a presumption of correctness. <u>Cavnar v. State</u>, No. M2002-00609-COA-R3-CV (Nashville February 26, 2003).

**b.**

By statute the County has been made liable for the harm caused by a deputy sheriff when the deputy is acting by virtue of or under color of the office. The statute, Tenn. Code Ann. § 8-8-302, says:

> Anyone incurring any wrong, injury, loss, damage or expense resulting from any act or failure to act on the part of any deputy appointed by the sheriff may bring suit against the county in which the sheriff serves; provided that the deputy is, at the time of such occurrence, acting by virtue of or under the color of the office.

**IV.**

## THE COUNTY'S LIABILITY FOR THE ACTIONS OF DEPUTY MAY

Does the Complaint, supplemented with the Affidavits of A.D. and M.A. Doe, state a claim for which the county should be liable?

A.D. Doe averred that Deputy May had a close friendship with M.A. Doe's mother and that they had told M.A. Doe not to tell anyone about the sexual encounters. A.D. Doe also averred that he had confronted Deputy May and that Deputy May had admitted having sex with M.A. Doe

In her affidavit, M.A. Doe said she agreed to have sex with Deputy May because he was a deputy sheriff; that during one of the sexual encounters, defendant May was in uniform; that even when he was not in uniform the indicia of his office (his badge and firearm) were visible or nearby when they had sex; that she felt she wouldn't get in trouble for having sex with defendant May because he was a deputy sheriff; that she felt defendant May would help her with her problem of getting kicked out of school because of his position as a deputy sheriff; that defendant May told her he could help her get out of trouble and she believed him because he was a deputy sheriff; and that defendant May was more attractive to her because he was a deputy sheriff.

Prior to the enactment of Tenn. Code Ann. § 8-8-302 the common law imposed liability on the Sheriff for "official wrongs" of his deputy. <u>See</u> <u>Jenkins v. Loudon County</u>, 736 S.W.2d 603 (Tenn. 1987). The statute shifted that liability to the County, id. at 605, a partial revocation of the County's absolute immunity for the acts of its officers in the discharge of their official duties. <u>O'Neal v. DeKalb County</u>, 531 S.W.2d 296 (Tenn. 1975). Statutes that revoke the immunity of a governmental entity are to be strictly construed. <u>Austin v. Shelby County</u>, 640 S.W.2d 852 (Tenn. Ct. App. 1982).

In two recent cases this Court has had the occasion to decide if the actions of deputy sheriffs were within the statutory language. In <u>Watts v. Maury County</u>, No. M2001-02768-COA-R3-CV (Nashville March 11, 2003) the record showed that the deputy was also a School Resource Officer whose duties included instructing students on law-related subjects, providing security in the school, and fostering a positive relationship between the students and the school

3

staff. He was very popular with the students. After a fourteen-year old student attempted to commit suicide, his mother asked him if there was anyone in whom he could confide. One of the persons mentioned was the SRO. The mother contacted the SRO who went to the student's home and spoke with the mother and then the student. Later in the day, the SRO suggested that the mother allow the student to spend the night at the SRO's apartment. The mother consented and drove her son to the apartment. While the mother was present, another student and his mother also visited in the apartment. After they were alone, the SRO and the plaintiff drove around and procured some marijuana and alcohol. They consumed a large amount of alcohol and went to bed where the SRO sexually assaulted the student.

This Court decided that a question of fact existed as to whether the SRO was acting under the color of his office. Relying on the definition in a criminal statute, Tenn. Code Ann. § 39-16-402, the Court said "when a deputy sheriff intentionally or knowingly uses his office to facilitate a crime he is acting under the color of his office under this statute." id at * 5. Later, the Court said that if the SRO "took advantage of his capacity . . . to facilitate his sexual assault" he was acting by virtue of or under color of his office. id.

In Doe v. Pedigo, et al., No. E2002-001311-COA-R3-CV (Knoxville June 30, 2003) Dr. Pedigo, the County Medical Examiner, and allegedly a deputy sheriff, invited the minor plaintiff to accompany him as he performed his duties doing investigations at crime scenes. Dr. Pedigo was on call at all times and the plaintiff chose to accompany him in the evening. When no calls came in for his services, Dr. Pedigo suggested that he and the plaintiff go to Dr. Pedigo's condominium. Dr. Pedigo suggested that the plaintiff should get an injection of hepatitis B vaccine because they might come into contact with blood at a crime scene. The plaintiff put on a hospital gown and took the injection which contained a drug designed to render him unconscious. After the plaintiff lost consciousness, Dr. Pedigo removed the plaintiff's clothing and photographed him in the nude.

This Court concluded that a disputed question of fact existed as to whether Dr. Pedigo "intentionally or knowingly used his office to facilitate the crimes committed against the plaintiff." id at * 6.

We think both Watts and Doe v. Pedigo can be distinguished from this case on the ground that the defendants in those cases arguably were performing their official duties when they committed the crimes against the plaintiffs. Dr. Pedigo was always "on call" and the plaintiff was with him to observe him doing his job. The SRO in Watts was also a counselor whose duties included "[i]nformal counseling of students and parents based on the expertise of a law enforcement officer." See Watts at * 2. Deputy May, on the other hand, was not on duty and did not, so far as it is alleged, use his official status to put himself in the position to commit the crimes he is accused of. He was a friend of the victim's mother, and that is how he came into contact with the daughter. Although the victim may have been attracted to May's uniform and other symbols of power, the Doe allegations do not describe a mis-use of official power to facilitate a wrong.

## V.

## THE COUNTY'S LIABILITY FOR THE ACTIONS OF THE UNKNOWN DEPUTIES

The plaintiffs also sought to impose liability on the County through Tenn. Code Ann. § 8-

8-302 for the actions of the unknown deputies. The allegations concerning them are found in the following paragraphs of the complaint:

18. Unknown persons identified in this Complaint as John and Jane Does conducted an investigation for the Knox County Sheriff Department internal affairs and detective units.

19. The Knox County Sheriff's internal affairs and detective investigations were designed and conducted in a manner to protect and cover-up for the conduct of Defendant May and to protect Knox County from responsibility under Tenn. Code Ann. § 8-8-302.

The only argument the plaintiffs raise in their brief on this issue is as follows:

As a result of the cover-up 'investigation' conducted by John and Jane Does, no charges were filed against May and May was allowed to resign so that, at a later time, May could again become a law enforcement officer. The conduct of John and Jane Does caused M.A. Doe severe mental anguish and the loss of statutory rights under the Tennessee Criminal Compensation Act and Victims of Crime Act.

A.D. Doe was denied benefits for his daughter's treatment under the Tennessee Criminal Compensation Act.

There is no citation of authority for the conclusions stated, nor is there any reference to the act itself.

There are two types of damages described in the plaintiff's brief for the actions of the unnamed deputies: M.A. Doe's mental anguish because deputy May went unpunished and might again become a law enforcement officer, and the loss of A.D. Doe and M.A. Doe of their rights under the Tennessee Criminal Injuries Compensation Act, Tenn. Code Ann. § 29-13-101 et seq..

We fail to see how the alleged harm resulted from the alleged spurious investigation of the internal affairs unit. Damages for emotional distress, absent some physical impact or other trauma, may be recovered only in limited circumstances. See Camper v. Minor, 915 S.W.2d 437 (Tenn. 1996). It must be remembered that the event allegedly causing the emotional distress is the inadequate investigation, not the sexual assault itself. We do not think the complaint states a claim for emotional distress.

Nor do we see how the alleged actions of the unnamed deputies resulted in any loss of rights under the Criminal Injuries Compensation Act. As we read the Act, it does not require a conviction of the perpetrator. In fact, the act provides for compensation where the act would constitute a crime under state or federal law, Tenn. Code Ann. § 29-13-104, and an award of damages may be made whether or not a person is prosecuted or convicted or acquitted. Tenn. Code Ann. § 29-13-108(f). Therefore, the legal conclusion in the Complaint that the Does have suffered a loss under the Tennessee Criminal Injuries Compensation Act has no support in the law itself.

# VI.

## LIABILITY OF THE SHERIFF IN HIS OFFICIAL CAPACITY

The Complaint alleges that the Sheriff covered up the wrongful conduct of his deputy and conducted a deficient criminal and internal investigation of the deputy's actions. He is also accused of permitting the deputy to resign, of refusing to discipline the deputy, and of failing to train the persons under him to conduct a proper internal investigation. The Complaint then alleges that the Sheriff violated his oath of office and is liable on his bond. According to the Complaint, all of these shortcomings impose liability on the Sheriff in his official capacity.

Assuming that all the factual allegations are true, we fail to see how the plaintiffs were damaged by the Sheriff's failures. See our discussion in Part V of this opinion.

But beyond the damage issue, neither the oath of office nor the bond create a cause of action for these plaintiffs. The plaintiffs do not cite any authority to support their position and, with respect to the bond, there is authority to the contrary. In Waters v. Bates, 227 F.Supp. 462 (E.D. Tenn. 1964) the Court said, "[I]t is clear that the official bond of a sheriff creates no new cause of action against him and that his official bond binds him no further than he would be liable without it . . ." 227 F.Supp. at 466.

# VII.
## LIABILITY OF THE SHERIFF INDIVIDUALLY

It is important to note again that the plaintiff does not allege that the sheriff is liable under the Tennessee Governmental Tort Liability Act, Tenn. Code Ann. § 29-1-101 et seq. or under 42 U.S.C. § 1983. The assertion of liability against the sheriff individually is based on his failure to properly train the internal affairs investigators and for conducting a "wrongful" internal affairs investigation.

For several reasons we are of the opinion that the Complaint does not state a claim against the sheriff individually. First, absent his official status, the sheriff has no duty to train the employees in the sheriff's department. Thus, a sheriff cannot be individually liable for failing to train his subordinates. See Riley v. Newton 947 F.3d 632 (11th Cir. 1996).

Next, any duty the sheriff had to conduct an internal affairs investigation of deputy May was a duty he owed to the public because of his official status. Therefore, any action against the sheriff individually is barred by the Public Duty Doctrine. Chase v. City of Memphis, 971 S.W.2d 380 (Tenn. 1998); Ezell v. Cockrell, 902 S.W.2d 394 (Tenn. 1995).

Finally, our discussion in Part V of this opinion of the damages alleged by the plaintiffs is relevant here. We fail to see how the plaintiffs suffered the damages alleged as a result of the failure to conduct a proper investigation of deputy May's conduct.

# VIII.

## DISQUALIFICATION OF THE TRIAL JUDGE

The plaintiffs ask this Court to require a new trial to be held before a different trial judge.

6

Since we have affirmed the dismissal of the Complaint, we decline to address this issue.

The judgment fo the trial Court is affirmed and the cause is remanded to the Circuit Court of Knox County for any further proceedings that may become necessary.  Tax the costs on appeal to the plaintiffs.


_____
BEN H. CANTRELL, JUDGE